PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

           *Plaintiff-Appellee,*

v.

SHAHZAD MATHUR, a/k/a Shazad
Mathur, a/k/a Shahzu Mathur,
a/k/a Shah Mathur, a/k/a Shane,

           *Defendant-Appellant.*

No. 11-6747

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
Terrence W. Boyle, District Judge.
(7:07-cr-00092-BO-1; 7:11-cv-00067-BO)

Argued: January 26, 2012

Decided: July 11, 2012

Before NIEMEYER, WYNN, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wynn and Judge Diaz joined. Judge Niemeyer also wrote a separate opinion in support of the judgment.

## COUNSEL

**ARGUED:** Kirsten Elena Small, NEXSEN PRUET, LLC, Greenville, South Carolina, for Appellant. Kristine L. Fritz,

OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** James D. Galyean, NEXSEN PRUET, LLC, Greenville, South Carolina, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Seth M. Wood, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

The issue presented in this appeal is whether the right recognized in *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010), which held that the Sixth Amendment right to counsel requires defense lawyers to inform their clients whether a plea agreement carries a risk of deportation, is a new right that has been made retroactively applicable to cases on collateral review so as to enable Shahzad Mathur to file a *timely* motion under 28 U.S.C. § 2255 to vacate his guilty plea for drug trafficking. *See* 28 U.S.C. § 2255(f)(3).

When Mathur, an alien residing in the United States, pleaded guilty in 2007 to conspiracy to distribute more than five kilograms of cocaine and, in 2008, received a sentence of 20 years' imprisonment, his lawyer failed to advise him of the immigration-related consequences of his plea, such as possible deportation, telling him "not to worry" about such consequences. After pleading guilty, however, the Department of Homeland Security initiated deportation proceedings against Mathur, based on his plea.

Almost three years after his conviction, on March 31, 2010, the Supreme Court handed down *Padilla*, and relying on that decision, Mathur filed a § 2255 motion on March 23, 2011,

seeking to vacate his plea. He contends that his motion is timely under § 2255(f)(3), as it was filed within one year from the date of the *Padilla* decision and *Padilla* recognized a new right that is retroactively applicable to cases on collateral review. *See* 28 U.S.C. § 2255(f)(3).

The district court denied Mathur's motion, finding it untimely. It concluded that, under the principles announced in *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion), *Padilla* is not to be applied retroactively to cases on collateral review.

We affirm, holding, as did the district court, that Mathur's § 2255 motion is barred by the one-year statute of limitations in § 2255(f). Mathur did not file his motion within one year after his judgment of conviction became final, as required by § 2255(f)(1), and he did not satisfy the requirement of § 2255(f)(3) that he file his motion within one year after the Supreme Court recognized a new right that had been made retroactively applicable to cases on collateral review. More particularly, we conclude that *Padilla* was not a "watershed rule[ ] implicating fundamental fairness," *United States v. Sanders*, 247 F.3d 139, 148 (4th Cir. 2001), such that it serves to enhance the "accuracy of the factfinding process," *Whorton v. Bockting*, 549 U.S. 406, 419 (2007).

I

Mathur filed his § 2255 motion to set aside his guilty plea some three years after his judgment of conviction became final. Accordingly, the motion would typically be barred by the one-year statute of limitations in § 2255(f)(1). Mathur contends, however, that because he is relying on *Padilla* and *Padilla* recognized a new right, the period runs from March 31, 2010, when *Padilla* was decided, thus making his motion filed on March 23, 2011, timely under § 2255(f)(3).

Subsection 2255(f)(3) provides that the one-year statute of limitations for filing a § 2255 motion runs from

the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]

28 U.S.C. § 2255(f)(3); *see also Dodd v. United States*, 545 U.S. 353, 357-58 (2005) (holding that the § 2255(f)(3) limitation period runs from the date on which the Supreme Court *recognizes the new right*, not the date on which the new right was "made retroactive[ ]"). Thus, to obtain the benefit of the limitations period stated in § 2255(f)(3), Mathur must show: (1) that the Supreme Court recognized a new right; (2) that the right "has been . . . made retroactively applicable to cases on collateral review"; and (3) that he filed his motion within one year of the date on which the Supreme Court recognized the right.

Mathur clearly satisfies the third requirement inasmuch as *Padilla* was decided on March 31, 2010, and Mathur filed his § 2255 motion within one year—on March 23, 2011.

As to the first requirement—whether *Padilla* recognized a new right—there is a circuit split. The Third Circuit has concluded that *Padilla* did not announce a new rule. *See United States v. Orocio*, 645 F.3d 630, 640-41 (3d Cir. 2011). But the Seventh and Tenth Circuits have concluded that it did. *See Chaidez v. United States*, 655 F.3d 684, 692 (7th Cir. 2011); *United States v. Chang Hong*, 671 F.3d 1147, 1151 (10th Cir. 2011).

Prior to *Padilla*, it was widely believed that the right to effective assistance of counsel in connection with plea bargaining, as recognized in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (announcing a two-part test for effective assistance claims), and *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (applying *Strickland* to the plea bargaining process), extended only to counsel's advice about the "direct" conse-

quences of the plea, *i.e.*, the probable sentence that would be imposed upon conviction, not the "collateral" consequences, *i.e.*, separate proceedings that might be affected by the conviction. *See* Gabriel J. Chin & Richard W. Holmes, Jr., *Effective Assistance of Counsel and the Consequences of Guilty Pleas*, 87 Cornell L. Rev. 697, 699 (2002) ("[E]leven federal circuits, more than thirty states, and the District of Columbia have held that lawyers need not explain collateral consequences"). In *Padilla*, however, the Supreme Court determined that deportation proceedings resulting from a criminal conviction bear such a "close connection to the criminal process" that they are "uniquely difficult to classify as either a direct or a collateral consequence." 130 S. Ct. at 1482. Accordingly, the Court held that the Sixth Amendment requires defense counsel to "inform her client whether his plea carries a risk of deportation." *Id.* at 1486.

In view of this background, Mathur claims that the right to be advised of the deportation-related consequences of pleading guilty was "newly recognized by the Supreme Court" in *Padilla*, therefore satisfying the first requirement of § 2255(f)(3). And the government agrees. Accordingly, we will assume, *without deciding*, that *Padilla* did recognize a new right, as § 2255(f)(3) requires.

The disputed issue in this case centers around the second requirement of § 2255(f)(3), whether the new right "has been made retroactively applicable to cases on collateral review."

The parties focus their arguments on whether *Padilla*, as a new rule, should be retroactively applied pursuant to the *Teague* analysis. As the *Teague* Court pointed out, new rules of constitutional law are generally "not . . . applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310. The strong presumption against retroactive application of new rules of constitutional law is necessary to protect "the principle of finality which is essential to the operation of our criminal justice system," and

it is also vital to minimize the intrusion that results when state courts "faithfully apply existing constitutional law only to have a federal court discover, during a [habeas] proceeding, new constitutional commands." *Id.* at 309-10 (alteration in original) (internal quotation marks omitted).

*Teague* did, however, recognize two exceptions to the general principle. First, "a new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." 489 U.S. at 311 (internal quotation marks omitted). This exception, however, is not relevant here, as Mathur does not suggest that it applies to *Padilla*.

Second, a new procedural rule should apply retroactively if it is "implicit in the concept of ordered liberty" and if, without the procedure, "the likelihood of an accurate conviction is seriously diminished." *Id.* at 311, 313 (internal quotation marks omitted). This exception is "extremely narrow," *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004), as it is reserved only for "watershed rules implicating fundamental fairness," *Sanders*, 247 F.3d at 148. Mathur argues nonetheless that it applies to *Padilla*. We disagree.

Since *Teague*, the Supreme Court has reviewed numerous claims that new rights fall within this exception, and it has rejected every single one of them. *See Whorton*, 549 U.S. at 418 (collecting cases). The only case that the Court has ever suggested might qualify for retroactive application under the second *Teague* exception is *Gideon v. Wainwright*, 372 U.S. 335 (1963), which incorporated the Sixth Amendment right to counsel against the states and held that the right is violated when states fail to appoint defense counsel for defendants who cannot afford representation. *See Beard v. Banks*, 542 U.S. 406, 417 (2004) ("In providing guidance as to what might fall within this exception, we have repeatedly referred to the rule of *Gideon* [ ] (right to counsel), and only to this rule"). The reason *Gideon* would be given retroactive applica-

tion under *Teague* is that "[w]hen a defendant who wishes to be represented by counsel is denied representation, . . . the risk of an unreliable verdict is intolerably high." *Whorton*, 549 U.S. at 419. By comparison, most other new rights—even the Supreme Court's transformation of the Confrontation Clause jurisprudence in *Crawford v. Washington*, 541 U.S. 36 (2004)—are "much more limited in scope" and have a "far less direct and profound" relationship with the "accuracy of the factfinding process." *Whorton*, 549 U.S. at 419.

To be sure, *Padilla* is important and especially significant for many individuals, such as Mathur, whose attorneys fail to warn them that pleading guilty might lead to their deportation. But the second *Teague* exception requires more of a procedural right. It cannot just be an important or even a "fundamental" right; it must be an important right in the specific service of enhancing the "accuracy of the factfinding process." *Whorton*, 549 U.S. at 419. Yet, the right recognized in *Padilla* has little, if anything, to do with accuracy in the factfinding process. *Padilla* violations take place only when a defendant has acknowledged guilt and submitted himself to be sentenced accordingly. When such a defendant is surprised at a later date by the initiation of deportation proceedings that were not forecast by defense counsel, the injustice, while real, nevertheless does not cast doubt on the verity of the defendant's admission of guilt or the propriety of the sentence imposed pursuant to the plea agreement. *See United States v. Broce*, 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence"). Thus, the impact of a *Padilla* violation is different in kind and substantially less in degree than the impact of a *Gideon* violation.

Moreover, Mathur has been unable to direct us to a case that has found that *Padilla* is a new rule that should be retroactively applied to cases on collateral review, and we have found none. The cases decided under *Padilla* to date have

held *either* that *Padilla* did not recognize a new right *or* that *Padilla* did recognize a new right but the right was *not* retroactively applicable to cases on collateral review. The Third Circuit's decision in *Orocio*, 645 F.3d at 641, represents the class of cases concluding that *Padilla* did not recognize a new right.[1] The other federal cases that have considered the matter have concluded that *Padilla* recognized a new right but that the right was not retroactively applicable to cases on collateral review. *See, e.g.*, *United States v. Martinez*, ___ F. Supp. 2d ___, 2012 WL 220244, at *1-*2 (D. Mass. 2012) (collecting circuit and district court authority and noting the "developing consensus of federal courts in holding that *Padilla* announced a new rule of constitutional law and thus, under *Teague*, does not apply retroactively").[2]

We therefore conclude that, insofar as *Padilla* recognized a new right, the right cannot be applied retroactively to cases

---

[1]*See also Jiminez v. Holder*, No. 10–cv–1528–JAH (NLS), 2011 WL 3667628, at *4 (S.D. Cal. Aug. 19, 2011); *United States v. Hurtado-Villa*, Nos. CV–10–01814–FJM (MHB), CR–08–01249–PHX–FJM, 2011 WL 4852284, at *5 (D. Ariz. Aug. 12, 2011); *United States v. Reid*, No. 1:97–CR–94, 2011 WL 3417235, at *3 (S.D. Ohio Aug. 4, 2011); *Song v. United States*, Nos. CV 09–5184 DOC, CR 98–0806 CM, 2011 WL 2940316, at *2 (C.D. Cal. July 15, 2011); *United States v. Dass*, No. 05–140(3) (JRT/FLN), 2011 WL 2746181, at *5 (D. Minn. July 14, 2011); *Amer v. United States*, No. 1:06CR118–GHD, 2011 WL 2160553, at *3 (N.D. Miss. May 31, 2011); *Zapata-Banda v. United States*, Nos. B:10–256, B:09–PO–2487, 2011 WL 1113586, at *4 (S.D. Tex. Mar. 7, 2011); *Marroquin v. United States*, No. M-10-156, 2011 WL 488985, at *7 (S.D. Tex. Feb. 4, 2011); *United States v. Zhong Lin*, No. 3:07–CR–44–H, 2011 WL 197206, at *2 (W.D. Ky. Jan. 20, 2011); *Luna v. United States*, No. 10CV1659 JLS (POR), 2010 WL 4868062, at *4 (S.D. Cal. Nov. 23, 2010); *United States v. Hubenig*, No. 6:03-mj-040, 2010 WL 2650625, at *8 (E.D. Cal. July 1, 2010).

[2]*But cf. Santos-Sanchez v. United States*, No. 5:06–cv–153, 2011 WL 3793691 (S.D. Tex. Aug. 24, 2011), which suggested that *Padilla* is "*sui generis*" because, according to the court, it is retroactively applicable on collateral review even though it is neither an old rule (and thus routinely applicable on collateral review) nor a new rule falling within a *Teague* exception. *Id.* at *10 & n.99.

on collateral review under the principles of *Teague*. And if *Padilla* did not recognize a new right, the essential condition of § 2255(f)(3) that a new right be recognized to trigger the one-year limitations period is not satisfied.

## II

Unable to direct us to a prior case that has found that *Padilla* created a new right that is retroactively applicable to cases on collateral review, Mathur argues that *Padilla* itself can be read to hold that its new right should be retroactively applied, even though it never said it was doing so, nor did it conduct any *Teague* analysis as would be necessary to do so.

In *Padilla*, the sole question presented was "whether, as a matter of federal law, Padilla's counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his removal from this country." 130 S. Ct. at 1478. Nowhere does the opinion make a single reference to *Teague* and its progeny, nor to the principles annunciated in those decisions. Section 2255(f)(3) does not authorize us to read between the lines of a prior opinion to discern whether that opinion, by implication, made a new rule retroactively applicable on collateral review. The only way to make a new rule retroactive "is through a *holding*," not through dictum, *Tyler v. Cain*, 533 U.S. 656, 663-64 (2001) (emphasis added), and *Padilla* made no such *holding*.

Even the *Padilla* dicta that Mathur relies on does not support the conclusion that he wishes us to draw. He emphasizes several paragraphs in *Padilla* in which the Court responded to concerns raised by the Solicitor General and others that the rule ultimately embraced by the Court might threaten the "finality of convictions obtained through guilty pleas" by encouraging challenges to those pleas. *Padilla*, 130 S. Ct. at 1484. The Court attempted to assuage those fears by underscoring how difficult it is to prevail on a *Strickland* claim and by pointing out that far fewer defendants would be willing to

risk disturbing a plea bargain than an unfavorable trial out-come. *See id.* at 1485-86. This discussion, however, does not help Mathur, because the Solicitor General's concern would extend, not only to pre-*Padilla* pleas (for which retroactivity would be a real issue) but also to post-*Padilla* pleas (for which retroactivity is a non-issue). This is so because, after *Padilla*, if defense attorneys were to fail to advise their clients of the clear immigration-related consequences of pleading guilty, the resulting plea would be vulnerable to challenge, and, therefore, the "finality of [the] conviction[ ] obtained through [that] guilty plea[ ]" would be challengeable. *Id.* at 1484.

The only passage in *Padilla* that specifically emphasizes the finality of *past* convictions and thus potentially alludes to retroactivity is the following:

> It seems unlikely that our decision today will have a significant effect on those convictions already obtained as the result of plea bargains. For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea. We should, therefore, presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty.

*Padilla*, 130 S. Ct. at 1485 (citation omitted). But this discus-sion fails to bolster Mathur's position, because he overlooks two explanations for the passage which are more plausible than the one he proposes. First, the passage can be read as referring to a potential retroactive application on direct appeal, not collateral review. Under *Teague*, new rules are generally not retroactively applicable on collateral review (except in "extremely narrow" circumstances), *see Schriro*, 542 U.S. at 352, but they are *always* fully retroactive on direct appeal, *see Davis v. United States*, 131 S. Ct. 2419, 2430 (2011). Thus, in referring generically to concerns about dis-

turbing "convictions already obtained as the result of plea bargains," 130 S. Ct. at 1485, the Court might have envisioned the possibility of defendants raising *Padilla* on direct appeal. If so, the entire discussion would be irrelevant to whether *Padilla* is a new rule that is retroactively applicable "on collateral review." *See* 28 U.S.C. § 2255(f)(3).

The second possible explanation for *Padilla*'s reflections on unsettling "convictions already obtained" is the fact that while new rules generally do not apply on collateral review, *old* rules do. *See Whorton*, 549 U.S. at 416. The Court may have anticipated that *Padilla* could be found to apply on collateral review, not as a new rule falling within a *Teague* exception, but rather as an *old rule* that was not covered by *Teague* in the first place. This chain of reasoning might help Mathur if, like many other defendants who have invoked *Padilla* in the courts since it was issued, he had been able to file his petition within one year of his conviction, as required by § 2255(f)(1). But because Mathur's entire position relies on the deferred statute of limitations contained in § 2255(f)(3), he must reject that inference and attempt to show that *Padilla*'s holding constitutes a new rule, *i.e.*, a "newly recognized" right, as required by § 2255(f)(3).

Thus, we reject Mathur's contention that *Padilla* itself held that the right it recognized was retroactively applicable to cases on collateral review or that it even contemplated the retroactive application of its holding.

### III

At bottom, because Mathur is unable to satisfy the requirements of 28 U.S.C. § 2255(f)(3) to make his § 2255 motion timely, his motion to set aside his plea is untimely. Accordingly, we affirm the judgment of the district court.

*AFFIRMED*

NIEMEYER, Circuit Judge, writing separately in support of the judgment:

While the reasons we give for the judgment are fully sufficient, I do note also that the very language of § 2255(f)(3) may have required Mathur to show that at the time he filed his § 2255 motion, *some prior court* had held that *Padilla* recognized a new rule that was retroactively applicable to cases on collateral review. Although the issue was not raised by the parties but rather by us during oral argument, it would appear that the statute does not direct us, in resolving a § 2255 motion, to determine whether a new right *is* retroactive or *should be* made retroactive; rather, it seems to direct us to determine whether the right *has been made* retroactive. *See* 28 U.S.C. § 2255(f)(3) (requiring a finding that the new right "*has been . . . made* retroactively applicable to cases on collateral review" (emphasis added)). This language would thus seem to require that we determine whether a prior court has held that the new right recognized in *Padilla* is to be applied retroactively to cases on collateral review.

In construing a different section of the Antiterrorism and Effective Death Penalty Act, the Supreme Court has held that language similar to that used in § 2255(f)(3) requires a *prior court* to have found the new rule retroactive. *See Tyler*, 533 U.S. at 667. In *Tyler*, the Court confronted the question of whether the rule announced in *Cage v. Louisiana*, 498 U.S. 39 (1990) (per curiam), had been "made retroactive to cases on collateral review by the Supreme Court" within the meaning of 28 U.S.C. § 2244(b)(2)(A). Addressing what the word "made" meant in the phrase "made retroactive," the Court rejected the contention that a court could satisfy the statutory language by making a rule retroactive *in the case before it*. The Court explained:

> Tyler suggests that, if *Cage* has not been made retroactive to cases on collateral review, we should make it retroactive today. We disagree. Because Tyler's

habeas application was his second, the District Court was required to dismiss it unless Tyler showed that this court *already had made* Cage *retroactive*.

* * *

We cannot decide today whether *Cage* is retroactive to cases on collateral review, because that decision would not help Tyler in this case. Any statement on *Cage*'s retroactivity would be dictum[.]

*Tyler*, 533 U.S. at 667-68 (emphasis added).

The *Tyler* Court also held that the word "made" in the phrase "made retroactive" does not allow a court, by simply expressing a principle or by stating dictum about retroactivity, to *make* a rule retroactive. 533 U.S. at 662-63 & n.4. It said, "Based on the plain meaning of the text read as a whole, we conclude that 'made' means '*held*.'" *Id.* (emphasis added).*

Of course, I recognize, as did the Supreme Court in *Dodd*, that such a construction of the language of § 2255(f)(3) would leave little room for the filing of § 2255 motions beyond the one-year limitations period provided in § 2255(f)(1), since a

---

*While the language of § 2244(b)(2)(A), at issue in *Tyler*, is similar to that in § 2255(f)(3), it differs in one respect. Under § 2244(b)(2)(A), the inquiry turns on whether a successive habeas application relies upon a new rule of constitutional law, "made retroactive to cases on collateral review *by the Supreme Court*." While § 2255(f)(3) similarly depends on whether the new right "has been . . . made retroactively applicable to cases on collateral review," unlike § 2244(b)(2)(A), the right need not have been made retroactive "by the Supreme Court." For this reason, we recently held that "§ 2255(f)(3) does not require that the initial retroactivity question be decided in the affirmative *only* by the Supreme Court." *United States v. Thomas*, 627 F.3d 534, 536 (4th Cir. 2010). Although we then proceeded, in *Thomas*, to resolve the retroactivity of the new rule at issue, *see id.* at 537-38, we never considered whether the phrase "made retroactively applicable" requires that a prior court (including but not limited to the Supreme Court) must have *already made* the rule retroactive.

court may not have made a new right retroactive within the one year after the Supreme Court recognized the right, as required by § 2255(f)(3). *See Dodd*, 545 U.S. at 359. But if § 2255(f)(3) is to be read in the same manner as *Tyler* read § 2244(b)(2)(A), then this consequence would merely reflect the policy decision inherent in the statute. As the *Dodd* Court observed, "We must presume that the legislature says in a statute what it means and means in a statute what it says there." *Id.* at 357 (internal quotation marks and alteration omitted). Explaining the narrow authority granted by § 2255(f)(3), the Court stated:

> Dodd points out that this Court rarely decides that a new rule is retroactively applicable within one year of initially recognizing that right. Thus, because of the interplay between [§§ 2255(h)(2) and 2255(f)(3)], an applicant who files a second or successive motion seeking to take advantage of a new rule of constitutional law will be time barred *except in the rare case in which this Court announces a new rule of constitutional law and makes it retroactive within one year.*

> Although we recognize the potential for harsh results in some cases, we are not free to rewrite the statute that Congress has enacted. . . . It is for Congress, not this Court, to amend the statute if it believes that the interplay of ¶¶ [(h)](2) and [(f)](3) of § 2255 unduly restricts federal prisoners' ability to file second or successive motions.

*Id.* at 359-60 (emphasis added).

The consequence recognized by *Dodd* is indeed presented in the case before us, as no court has held that *Padilla* recognized a new right that is retroactively applicable to cases on collateral review within the year after *Padilla* recognized the right. Thus, even if Mathur could show that *this court* ought

to apply *Teague* so as to make *Padilla* retroactive, it is not clear that § 2255(f)(3) would allow us to do so.