**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39672**

| | | |
|---|---|---|
| ERNESTO GUTIERREZ-MEDINA, | ) | 2014 Opinion No. 66 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: August 20, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Payette County. Hon. Susan E. Wiebe, District Judge.

Judgment dismissing petition for post-conviction relief, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Ernesto Gutierrez-Medina appeals from the district court's judgment summarily dismissing his petition for post-conviction relief. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

In 1995, Gutierrez-Medina, a citizen of Mexico and legal permanent resident of the United States, was arrested for delivery of a controlled substance. In 1997, he entered an *Alford*[1] plea to possession of a controlled substance and was placed on probation for five years, with an underlying unified five-year sentence, with two and a half years determinate. Gutierrez-Medina did not appeal his conviction or sentence. Several months later, Gutierrez-Medina was deported to Mexico by federal immigration officials due to his conviction. Gutierrez-Medina reentered

_____

[1]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

1

the United States and in 2010, was arrested by immigration officials for being in the United States unlawfully.

In 2011, Gutierrez-Medina filed a petition for post-conviction relief regarding his 1997 guilty plea. He asserted that his trial counsel was ineffective for improperly advising him that a guilty plea would not affect his immigration status. The State filed a motion for summary dismissal, contending Gutierrez-Medina's petition was untimely. Gutierrez-Medina responded, requesting the district court toll the statute of limitations applicable to post-conviction actions to protect his due process rights. Specifically, he contended that the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356, 373-74 (2010), holding that the Sixth Amendment right to effective assistance of counsel requires that an attorney accurately inform a client when a guilty plea carries a risk of deportation, should be retroactively applied to his case.

The district court determined *Padilla* announced a new rule, but it was not a watershed rule of criminal procedure and so did not apply retroactively. Gutierrez-Medina did not raise due process concerns warranting equitable tolling of the statute of limitations. The district court granted the State's motion for summary dismissal of Gutierrez-Medina's post-conviction petition. Gutierrez-Medina filed a motion for reconsideration, which the district court denied. He now appeals.

## II.

## ANALYSIS

Gutierrez-Medina contends the district court erred by granting the State's motion for summary dismissal of his petition for post-conviction relief. He argues the statute of limitations applicable to post-conviction petitions should be equitably tolled on due process grounds because *Padilla* should be retroactively applied to his case. Therefore, he contends, he presented a genuine issue of material fact as to whether he received ineffective assistance of counsel due to counsel's allegedly incorrect advice as to the immigration implications of his guilty plea.

A petition for post-conviction relief initiates a civil, rather than criminal, proceeding, governed by the Idaho Rules of Civil Procedure. Idaho Code § 19-4907; *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). *See also Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if "it appears from the pleadings, depositions, answers to interrogatories, and admissions and

2

agreements of facts, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." I.C. § 19-4906(c). On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010). Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009).

The statute of limitation for noncapital post-conviction actions provides that a petition for post-conviction relief may be filed at any time within one year from the expiration of the time for appeal, or from the determination of appeal, or from the determination of a proceeding following an appeal, whichever is later. I.C. § 19-4902(a). The failure to file a timely petition is a basis for dismissal of the petition. *Kriebel v. State*, 148 Idaho 188, 190, 219 P.3d 1204, 1206 (Ct. App. 2009). The statute of limitation may be equitably tolled, however. Equitable tolling for post-conviction actions is borne of the petitioner's due process right to have a meaningful opportunity to present his or her claims. *Schultz v. State*, 151 Idaho 383, 385-86, 256 P.3d 791, 793-94 (Ct. App. 2011); *Leer v. State*, 148 Idaho 112, 115, 218 P.3d 1173, 1176 (Ct. App. 2009). A petitioner's due process right is not violated by a statute of limitation bar unless he can show such an inability to file a timely petition denied him a meaningful opportunity to present his post-conviction claims. *See Amboh v. State*, 149 Idaho 650, 653, 239 P.3d 448, 451 (Ct. App. 2010); *Leer*, 148 Idaho at 115, 218 P.3d at 1176.

Equitable tolling has only been recognized in Idaho where the petitioner was incarcerated in an out-of-state facility without legal representation or access to Idaho legal materials and where mental disease and/or psychotropic medication prevented the petitioner from timely pursuing challenges to the conviction. *Rhoades*, 148 Idaho at 251, 220 P.3d at 1070; *Schultz*, 151 Idaho at 386, 256 P.3d at 794; *Leer*, 148 Idaho at 115, 218 P.3d at 1176. Our Supreme Court has stated, however, that at least where the post-conviction claim raises important due process issues, the limitation period may be postponed until the petitioner has discovered the factual basis for the claim. *Charboneau v. State*, 144 Idaho 900, 904, 174 P.3d 870, 874 (2007). *But see Evensiosky v. State*, 136 Idaho 189, 191, 30 P.3d 967, 969 (2001) (recognizing the possibility of a discovery exception, but refusing to apply equitable tolling where the defendant technically had six weeks after he learned of the claim in which to file a post-conviction

3

petition). This exception is narrow; as we said in *Amboh*, "[I]n cases where equitable tolling was allowed, the petitioner was alleged to have been unable to timely file a petition due to extraordinary circumstances beyond his effective control, or the facts underlying the claim were hidden from the petitioner by unlawful state action." *Amboh*, 149 Idaho at 653, 239 P.3d at 451.

Gutierrez-Medina contended below, and now on appeal, that equitable tolling should apply in this case because the constitutional right recognized in *Padilla* raises "important due process concerns" that are retroactively applicable to his case. He argues that because the United States Supreme Court did not decide *Padilla* until well after his conviction was final, this post-conviction action was his first opportunity to present this particular claim. We need not decide whether the retroactive application of a new rule of criminal procedure would warrant equitable tolling in this instance because we agree with the district court that *Padilla* does not apply retroactively.

In *Padilla*, the United States Supreme Court held for the first time that the Sixth Amendment right to effective assistance of counsel requires an attorney to inform a client when a guilty plea carries a risk of deportation. *Padilla*, 559 U.S. at 373-74. Because counsel had not so advised Padilla, the Court ruled he had established deficient performance under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and remanded the matter to the state court to determine whether Padilla could establish he had been prejudiced by counsel's failure to advise him of the immigration consequences of his guilty plea. *Padilla*, 559 U.S. at 369.

Generally, "new" constitutional rules are not applicable to cases already final when the rule is announced. *Teague v. Lane*, 489 U.S. 288, 310 (1989). *See also Whorton v. Bockting*, 549 U.S. 406, 416 (2007) ("[A]n old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review."). The United States Supreme Court has, however, set forth two exceptions where a new rule will apply retroactively: if the rule substantively alters punishable conduct or if it is a "watershed" rule implicating the fundamental fairness of the trial. *Teague*, 489 U.S. at 311. It is the watershed exception which Gutierrez-Medina argues is applicable in this case.[2]

---

[2] Gutierrez-Medina does not contest the district court's determination that *Padilla* announced a "new" criminal rule and thus we do not address the issue. We do note there has existed a split of authority among state and federal courts on this issue, but the United States Supreme Court recently settled the issue under federal law, holding in *Chaidez v. United States*,

4

The Supreme Court has explained that in order to qualify as a watershed rule, a decision must satisfy two requirements: it must "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding," *Whorton*, 549 U.S. at 418, and it must announce a rule "without which the likelihood of an accurate conviction is *seriously diminished*," *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004).[3] Elevating the standard even more, a "showing that a new procedural rule is based on a 'bedrock' right" is insufficient because "a new rule must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding." *Whorton*, 549 U.S. at 420-21.

The United States Supreme Court has repeatedly emphasized the tremendously limited scope of *Teague's* watershed exception in its jurisprudence, stating in one case that "it is clearly meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty." *Beard v. Banks*, 542 U.S. 406, 417 (2004). The Supreme Court has remarked that it is "unlikely that many such components of basic due process have yet to emerge," *id*., and has repeatedly identified its decision in *Gideon v. Wainwright*, 372 U.S. 335 (1963), finding the constitutional right to assistance of counsel at all critical stages of the criminal process, as the only rule which, if it had been decided after *Teague*, might have fallen within *Teague's* watershed exception. *Whorton*, 549 U.S. at 418-19; *Beard*, 542 U.S. at 417-18. In doing so, the Court has explicitly rejected assigning watershed status to several new rules of criminal procedure. *See Whorton*, 549 U.S. at 419 (holding that the Supreme Court's transformation of Confrontation Clause jurisprudence in *Crawford v. Washington*, 541 U.S. 36 (2004), did not amount to a watershed rule of criminal procedure as it was "much more limited in scope" and had a "far less direct and profound" relationship with the "accuracy of the fact[-

___ U.S. ___, ___, 133 S. Ct. 1103, 1105 (2013), that *Padilla* did announce a new rule for the purposes of retroactivity analysis. The *Chaidez* Court did not reach the issue of whether *Padilla* constituted a watershed rule because the parties had stipulated it did not. *Id*. at ___ n.3, 133 S. Ct. at 1107 n.3.

[3]     At least one commentator has noted the inherent tension that exists in applying the *Teague* analysis: "the Court must eschew obviousness to satisfy the need for newness, while at the same time acknowledging obviousness to avoid 'watershedness.'" Ezra D. Landes, *A New Approach to Overcoming the Insurmountable "Watershed Rule" Exception to Teague's Collateral Review Killer*, 74 MO. L. REV. 1, 16 (2009).

]finding process" than the right to counsel announced in *Gideon*); *Schriro*, 542 U.S. at 354-56 (rejecting the contention that *Ring v. Arizona*, 536 U.S. 584 (2002), which held that a sentencing judge sitting without a jury may not find an aggravating circumstance necessary for imposition of the death penalty, announced a watershed rule of criminal procedure); *Beard*, 542 U.S. at 420 (declining to find that *Mills v. Maryland*, 486 U.S. 367 (1988), which announced a new rule invalidating capital sentencing schemes requiring juries to disregard mitigating factors not found unanimously, constituted a watershed ruling).

We are aware of no court that has found that *Padilla* applies retroactively under *Teague's* watershed exception. The Tenth Circuit Court of Appeals addressed the question in *United States v. Chang Hong*, 671 F.3d 1147 (10th Cir. 2011), after determining (pre-*Chaidez*)[4] that *Padilla* established a new rule of criminal procedure. The court first noted the Supreme Court has not hesitated to hold that less sweeping and fundamental rules than *Gideon* do not fall within *Teague's* second exception. *Chang Hong*, 671 F.3d at 1158. With this in mind, the Tenth Circuit then determined *Padilla* did not announce a watershed rule of criminal procedure:

> Simply put, *Padilla* is not *Gideon*. *Padilla* does not concern the fairness and accuracy of a criminal proceeding, but instead relates to the deportation consequences of a defendant's guilty plea. The rule does not affect the determination of a defendant's guilt and only governs what advice defense counsel must render when his noncitizen client contemplates a plea bargain. *Padilla* would only be at issue in cases where the defendant admits guilt and pleads guilty. In such situations, because the defendant's guilt is established through his own admission--with all the strictures of a Rule 11 plea colloquy--*Padilla* is simply not germane to concerns about risks of inaccurate convictions or fundamental procedural fairness.

*Chang Hong*, 671 F.3d at 1158.

The Eleventh Circuit followed suit in *Figuereo-Sanchez v. United States*, 678 F.3d 1203 (11th Cir. 2012). Assuming *Padilla* announced a new rule, the court first determined that *Padilla* "did not alter any bedrock elements of criminal proceedings" and characterized *Padilla* as "merely defin[ing] the contours of deficient and effective representation under *Strickland*." *Figuereo-Sanchez*, 678 F.3d at 1208. The court also disagreed that deficient representation under *Padilla* would result in an impermissibly large risk of an inaccurate conviction for the purposes of retroactivity. *Figuereo-Sanchez*, 678 F.3d at 1208 (citing *Whorton*, 549 U.S. at

---

4       *See* footnote 2, *supra*.

418).  Although recognizing there was "little doubt that ineffective assistance of counsel may affect the accuracy and fairness of a conviction," the court noted that it is "'not enough under *Teague* to say that [the] rule . . . is directed toward the enhancement of reliability and accuracy in some sense.'"  *Figuereo-Sanchez*, 678 F.3d at 1209 (quoting *Sawyer v. Smith*, 497 U.S. 227, 242-43 (1990)).  The court then distinguished the deprivation of counsel under *Gideon* and its progeny, where the Supreme Court has found a presumption of an "impermissibly large risk" of inaccuracy in the outcome, from *Strickland*, where the court refused to extend the same presumption to typical ineffective assistance of counsel claims.  *Figuereo-Sanchez*, 678 F.3d at 1209.  Under *Strickland*, even if deficient performance is found, a petitioner is required to demonstrate "'a reasonable probability that, absent the errors, the fact[-]finder would have had a reasonable doubt respecting guilt.'"  *Figuereo-Sanchez*, 678 F.3d at 1209 (quoting *Strickland*, 466 U.S. at 695).  Thus, the *Figuereo-Sanchez* Court concluded, it could not say that ineffective assistance of counsel under *Strickland* is on par with deprivation of counsel under *Gideon* in terms of its presumed effect on the accuracy of the proceedings.  *Figuereo-Sanchez*, 678 F.3d at 1209.  The requirement that a petitioner show prejudice, the court continued, "stands in stark contrast to the presumption under *Gideon* that deprivation of counsel renders 'the risk of an unreliable [conviction] intolerably high.'"  *Figuereo-Sanchez*, 678 F.3d at 1209 (quoting *Whorton*, 549 U.S. at 419).

The Fourth Circuit also declined to find that *Padilla* announced a watershed rule.  In *United States v. Mathur*, 685 F.3d 396, 399 (2012), the court noted that as compared to *Gideon*, *Padilla* was "much more limited in scope" and had a "far less direct and profound" relationship with the "accuracy of the fact[-]finding process."  And, although recognizing that *Padilla* "is important and especially significant for many individuals," the court noted the second *Teague* exception requires "more of a procedural right."  *Mathur*, 685 F.3d at 400.  "It cannot just be an important or even a 'fundamental' right," the *Mathur* Court continued, "it must be an important right in the specific service of enhancing the 'accuracy of the fact-finding process.'"  *Id*. (quoting *Whorton*, 549 U.S. at 419).  The court determined that the right recognized in *Padilla* had little, if anything to do with the fact-finding process because *Padilla* violations only occur once a defendant has pled guilty and submitted himself to sentencing.  *Mathur*, 685 F.3d at 400.  In the court's view, "[w]hen such a defendant is surprised at a later date by the initiation of deportation proceedings that were not forecast by defense counsel, the injustice, while real, nevertheless does

not cast doubt on the veracity of the defendant's admission of guilt." *Id*. On this basis, the court concluded that a *Padilla* violation "is different in kind and substantially less in degree than the impact of a *Gideon* violation." *Mathur*, 685 F.3d at 400.

In *Campos v. State*, 816 N.W. 2d 480, 499 (Minn. 2012), the Minnesota Supreme Court also rejected the contention that *Padilla* announced a watershed rule. The court first examined the "long line of [United States Supreme Court and Minnesota Supreme Court] precedent rejecting important new rules as 'watershed rulings,'" and determined that in comparison to these rights which were not afforded watershed status, *Padilla's* new interpretation of the right to effective assistance of counsel did not qualify as a rule going to the heart of a fair proceeding. *Campos*, 816 N.W. 2d at 498. The court further reasoned:

> Requiring counsel to inform his noncitizen client of the immigration consequences of a guilty plea does not decrease the risk of an inaccurate conviction. *Padilla* is only implicated "in cases where the defendant admits guilt and pleads guilty." *Chang Hong*, 671 F.3d at 1158. In such cases, "because the defendant's guilt is established through his own admission . . . *Padilla* is simply not germane to concerns about risks of inaccurate convictions or fundamental procedural fairness." *Id*. Moreover, *Padilla's* holding, unlike the expansive rule in *Gideon* establishing a right to counsel in all felony cases, affects only a small subset of defendants, indicating that the rule does not have a fundamental and profound impact on criminal proceedings generally. *See* [*United States v. Mandanici*, 205 F.3d 519, 528 (2nd Cir. 2000)] (explaining that a watershed rule must institute "a 'sweeping' change that applies to a large swathe [sic] of cases rather than a 'narrow right' that applies only to a 'limited class' of cases" (quoting [*O'Dell v. Netherland*, 521 U.S. 151, 167 (1997)]); *see also Ellis v. United States*, 806 F. Supp. 2d 538, 549 (E.D.N.Y. 2011) (concluding that the rule announced in *Padilla* was not a watershed rule because "the rule has nothing to do with the accuracy of a defendant's conviction," applied "a relatively narrow holding," and "only applies to a limited class of defendants--noncitizen defendants who face charges that carry with them immigration consequences").

*Campos*, 816 N.W.2d at 498-99. *Accord State v. Poblete*, 260 P.3d 1102, 1107 (Ariz. Ct. App. 2011) ("We cannot say a violation of the rule introduced in *Padilla* would impact the accuracy of conviction, and therefore it is not a watershed rule."); *State v. Sosa*, 733 S.E.2d 262, 265 (Ga. 2012) (determining, with little discussion, that *Padilla* did not amount to a watershed rule of criminal procedure); *Perez v. State*, 816 N.W.2d 354, 359 (Iowa 2012) (holding that *Padilla* is "clearly" not a watershed rule and noting that no other court has yet to find that it is); *People v. Gomez*, 820 N.W.2d 217, 222 (Mich. 2012) (holding *Padilla* did not announce a requirement so implicit in the structure of criminal proceedings that retroactivity was mandated, but "[r]ather,

8

the requirement applies to a subset of criminal defendants who might wish to consider immigration consequences as part of the many variables they will assess when deciding whether to enter a plea"); *State v. Gaitan*, 37 A.3d 1089, 1104 (N.J. 2012) (determining that *Padilla* does not "reach the heights required for a 'watershed' rule" under *Teague*); *State v. Alshaif*, 724 S.E.2d 597, 604 (N.C. Ct. App. 2012) (agreeing with the reasoning of *Chang Hong* in determining *Padilla* did not announce a watershed rule).

Gutierrez-Medina points out that although the Idaho Supreme Court adopted the *Teague* retroactivity test in *Rhoades v. State*, 149 Idaho 130, 139, 233 P.3d 61, 70 (2010), it specifically held that pursuant to *Danforth v. Minnesota*, 552 U.S. 264, 267-69 (2008),[5] state courts are not required to blindly follow the Supreme Court's view of what constitutes a new rule or whether a new rule is a watershed rule. *Rhoades*, 149 Idaho at 139, 233 P.3d at 70. The *Rhoades* Court noted that although the United States Supreme Court has strictly interpreted *Teague* in order to avoid excessive interference by federal habeas courts in state criminal convictions that have become final, Idaho courts do "not have a similar concern for comity when interpreting whether a decision pronounces a new rule of law for purposes of applying *Teague*." *Rhoades*, 149 Idaho at 139, 233 P.3d at 70. Rather, the *Rhoades* Court held, in considering whether to give retroactive effect to a rule of law, Idaho courts should "reflect independent judgment, based upon the concerns of this Court and the 'uniqueness of our state, our Constitution, and our long-standing jurisprudence.'" *Id*. (quoting *State v. Donato*, 135 Idaho 469, 472, 20 P.3d 5, 8 (2001) (stating the applicable considerations where the Idaho Supreme Court has found that the Idaho Constitution provides greater protection than the U.S. Constitution).

Gutierrez-Medina argues that given Idaho's "unique jurisprudence" we should find that *Padilla* constitutes a watershed rule. Specifically, he points to two factors which, he asserts, support the application of a "lesser standard for what constitutes a watershed rule" in Idaho than is applied under federal habeas corpus review: Idaho has unique jurisprudence with regard to claims of ineffective assistance of counsel in that they generally may only be brought through a collateral attack under the Uniform Post-Conviction Procedure Act (UPCPA) rather than on direct appeal, and Idaho provides for a statutory right to counsel broader than is provided solely

---

[5]     In *Danforth v. Minnesota*, 552 U.S. 264, 267-69 (2008), the Court held that the federal retroactivity doctrine does not constrain the authority of state courts to give broader effect to new rules of criminal procedure than is required by *Teague*.

by the federal constitution, which reflects a heightened concern for the protection of the right to counsel in Idaho.

In regard to his first argument, Gutierrez-Medina contends the bases of *Teague's* strict retroactivity analysis are concerns unique to the context of federal habeas corpus review--most importantly a federal reluctance to interfere with the finality of state judgments. Collateral challenges to criminal convictions pursuant to the UPCPA, he argues, do "not share in the salient features of collateral challenges under federal habeas that have motivated the federal courts to apply such rigid and incredibly narrow standards for a watershed rule for purposes of retroactivity." This is particularly true, Gutierrez-Medina argues, in regard to claims of ineffective assistance of counsel which generally may not be brought on direct review but must be pursued pursuant to the UPCPA. Unlike federal habeas claims, which require exhaustion of state remedies (and thus a previous opportunity to litigate the claim), collateral attacks in post-conviction are "almost always a defendant's first and sole state mechanism to raise claims of ineffective assistance of counsel of the type described in *Padilla*" and therefore fundamental fairness requires that *Padilla* be deemed a watershed rule in order to allow pursuit of such claims.

We are not convinced that this distinction between federal habeas proceedings and UPCPA proceedings warrants the expansive interpretation that Gutierrez-Medina advances. First, and most importantly, even after the *Rhoades* Court imposed a requirement that Idaho courts conduct an independent *Teague* analysis, the Court continued to recognize that in order to qualify as a watershed rule, a procedural rule must be one without which the likelihood of an accurate conviction is *seriously* diminished. *Rhoades*, 149 Idaho at 139, 233 P.3d at 7. Decisions falling within *Teague's* watershed designation are, the *Rhoades* Court continued, "an extremely narrow class." *Rhoades*, 149 Idaho at 140, 233 P.3d at 71. Thus, it is apparent that although the *Rhoades* Court did open the door somewhat wider to the possibility of finding a watershed rule requiring retroactive application, the Court remains committed to a continued, relatively narrow interpretation of *Teague's* reach. Adoption of Gutierrez-Medina's reasoning, that the distinctions between federal habeas and Idaho procedure governing claims of ineffective assistance of counsel warrants retroactive application of *Padilla*, would inevitably result in the bar for reaching *Teague's* watershed requirement being significantly lower in Idaho in regard to

all ineffective assistance of counsel claims. Our reading of *Rhoades* does not indicate this was our Supreme Court's intent.[6]

In addition, we do not agree with Gutierrez-Medina's characterization of the concerns underlying the narrowness of the *Teague* exceptions as being solely "specific to the context of federal habeas corpus." Certainly, one consideration mentioned by the *Teague* Court, the need to prevent excessive interference by the federal habeas courts, has little application to collateral review by the state courts themselves. However, the *Teague* analysis was also based on an additional policy consideration--finality. *Danforth*, 552 U.S. at 279-280; *Teague*, 489 U.S. at 306. As the *Teague* Court noted:

> Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect.

*Teague*, 489 U.S. at 309. The finality of judgments is a concept equally applicable to state courts, as consistently recognized in Idaho. *See State v. Weber*, 140 Idaho 89, 93, 90 P.3d 314, 318 (2004) (recognizing the importance of finality of judgments in limiting a defendant's right to collaterally attack a criminal conviction); *State v. Schwab*, 153 Idaho 325, 328, 281 P.3d 1103, 1106 (Ct. App. 2012) (same).

Gutierrez-Medina also contends that because Idaho has a broader statutory right to counsel than is imposed by the federal Constitution, a lower threshold for finding *Padilla* is a watershed rule should be applicable in this case. Gutierrez-Medina is correct that in some instances, Idaho's statutory right to counsel is more expansive than the federal right to counsel.[7]

---

[6]    We note that Idaho is not unique in generally requiring that claims of ineffective assistance of counsel be raised in collateral proceedings rather than on direct review. *See* Jaclyn Kelley, *to Plea or Not to Plea: Retroactive Availability of* Padilla v. Kentucky *to Noncitizen Defendants on State Postconviction Review*, 18 MICH. J. RACE & L. 213, 230 (2012). Nevertheless, as we discussed above, every state court that has addressed the issue has concluded that *Padilla* does not rise to the level of a watershed rule of criminal procedure.

[7]    We do note, however, that Gutierrez-Medina somewhat overstates the issue by his assertion that "[e]specially noteworthy is the fact that, by Idaho's unique jurisprudence and under our statutory laws, a defendant enjoys a statutory right to counsel in post-conviction proceedings," while the United States Supreme Court has not recognized such a right pursuant to the Sixth Amendment. In fact, post-conviction petitioners are only entitled to counsel upon

11

It does not automatically follow, however, that this distinction supports a finding that *Padilla* announced a watershed rule. As we noted above, despite our Supreme Court's adoption of a modified approach to *Teague*, the fundamental questions inherent in that analysis are still applicable. It still stands that in order to be considered a watershed rule, a procedural rule must be one without which the likelihood of an accurate conviction is *seriously* diminished. *Rhoades*, 149 Idaho at 139, 233 P.3d at 70. The *Rhoades* Court specifically examined this factor with regard to the question in that case: whether the United States Supreme Court's holding in *Ring*, 536 U.S. 584, that the Sixth Amendment's jury trial guarantee requires that a jury find an aggravating circumstance necessary to impose the death penalty instead of a judge, amounted to a watershed rule of criminal procedure. *Rhoades*, 149 Idaho at 140, 233 P.3d at 71. The Court determined such was not the case with the *Ring* rule, agreeing with the United States Supreme Court that, given the debate as to whether juries are better fact-finders than judges, it could not confidently say that judicial fact-finding serious diminishes accuracy. *Rhoades*, 149 Idaho at 140, 233 P.3d at 71 (citing *Schriro*, 542 U.S. at 355-56).

Here, Gutierrez-Medina makes no argument that without the *Padilla* rule, the likelihood of accurate convictions was seriously diminished. We agree with the numerous jurisdictions discussed above that have explicitly concluded that *Padilla* is "simply not germane to concerns about risks of inaccurate convictions" given that it "does not affect the determination of a defendant's guilt." *Chang Hong*, 671 F.3d at 1158. *See also Mathur*, 685 F.3d at 400 (stating that *Padilla* has "little, if anything" to do with the accuracy of the fact-finding process because *Padilla* violations only occur once a defendant has pled guilty and submitted himself to sentencing); *Campos*, 816 N.W.2d at 498 ("Requiring counsel to inform his noncitizen client of the immigration consequences of a guilty plea does not decrease the risk of an inaccurate conviction.").

An additional consideration by the *Rhoades* Court in determining that *Ring* was not to be applied retroactively is also notable. Since the Court came to the same conclusion as the United States Supreme Court (that *Ring* did not announce a watershed rule), the *Rhoades* Court felt it necessary to reiterate that the Court was "still committed to independently analyzing requests for

---

alleging facts giving rise to the possibility of a valid claim. *Charboneau v. State,* 140 Idaho 789, 792-93, 102 P.3d 1108, 111-12 (2004).

retroactive application of newly-announced principles of law" in accordance with the uniqueness of Idaho and its laws. *Rhoades*, 149 Idaho at 140, 233 P.3d at 71. "However," the Court continued, "jury participation in the sentencing process of a capital case is not required under the Idaho Constitution. . . . Accordingly, this Court's independent analysis of the *Teague* standard yields the same result as the U.S. Supreme Court." *Rhoades*, 149 Idaho at 140, 233 P.3d at 71.

In sum, even independently analyzing the issue in light of the "uniqueness of our state, our Constitution, and our long-standing jurisprudence," *Id.* at 139, 233 P.3d at 70, we reach the same conclusion as the jurisdictions discussed above which have uniformly rejected classifying *Padilla* as a watershed rule. Their reasoning is sound and we find no Idaho-specific rationale dictating a divergent conclusion. Thus, the district court did not err by granting the State's motion for summary dismissal of Gutierrez-Medina's petition for post-conviction relief as it was premised on his contention that *Padilla* applied retroactively. The district court's judgment summarily dismissing Gutierrez-Medina's petition for post-conviction relief is affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**