IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 48846

| | | |
|---|---|---|
| **THOMAS K. HOOLEY,** | ) | **Boise, September 2022 Term** |
| | ) | |
| **Petitioner-Appellant,** | ) | **Opinion Filed: October 27, 2023** |
| | ) | |
| **v.** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **SUBSTITUTE OPINION. THE** |
| | ) | **COURT'S PRIOR OPINION DATED** |
| **Respondent.** | ) | **MARCH 23, 2023, IS WITHDRAWN** |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Gooding County. Rosemary Emory, District Judge.

The order of the district court is <u>affirmed</u>.

Nevin, Benjamin & McKay LLP, Boise, for appellant, Thomas K. Hooley. Dennis Benjamin argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent, State of Idaho. Kenneth K. Jorgensen argued.

―――――――――――――

BEVAN, Chief Justice.

Thomas Hooley appeals from the district court's summary dismissal of his petition for post-conviction relief. In 2014, Hooley was convicted of aiding and abetting aggravated battery and kidnapping in the first degree. Hooley petitioned for post-conviction relief in 2019, asserting that (1) he was actually innocent and (2) the prosecution withheld evidence in contravention of *Brady v. Maryland*, 373 U.S. 83 (1963). The district court concluded that Hooley's actual innocence claim was time-barred and further concluded the claim failed on the merits. While the district court found that Hooley's *Brady* claim was timely, the court ultimately determined the claim failed on the merits. As a result of its conclusions, the district court summarily dismissed the petition without an evidentiary hearing. Hooley timely appeals. For the reasons below, we affirm the district court's decision.

I. FACTUAL AND PROCEDURAL BACKGROUND

A. Factual Background

Two people kidnapped Jason Given from the Apollo Motel in Twin Falls, Idaho on July 13, 2013. The kidnappers took Given to a secluded location near Gooding, Idaho, atop a hill that was out of sight of a road below. The kidnappers stunned Given with a "stun baton" and then bound Given's hands and feet using zip ties. They purportedly "interrogated" Given, hitting him in the face and threatening further use of the stun baton. At trial, it was disputed how long the "interrogation" lasted. Ryan Cunningham, one of the admitted kidnappers, testified the interrogation lasted about thirty to forty minutes. Given testified that no one asked him any questions but that "the torture" lasted around ten minutes. At this point, Cunningham stabbed Given twice, once in the back of the head and once in the temple. Cunningham then cut Given's throat twice and attempted to break Given's neck, telling Given "this is for all the times you hurt her [Autumn Boyack]." Believing that Given was dead, Cunningham and his accomplice left the scene and went back to Twin Falls. Given, however, survived the incident.

At first, Given said he did not recognize his assailants. He told his rescuer and the police officers who responded to the scene that he had been "jumped" by "two white males" he did not know. It was not until five days after the attack and three days after Given had been released from the hospital that Given told the police a different version of the story about the assault. He said the names of his two kidnappers were Ryan Cunningham and Thomas Hooley. Both men were later arrested.

Detective Derrick Walker interviewed Hooley on July 30, 2013. Hooley admitted knowing both Cunningham and Given and to seeing them both on the day of Given's assault. Even so, Hooley denied traveling with Cunningham and Given to the secluded area and participating in the attack. Walker explained to Hooley that "the first one to talk gets the deal." Hooley maintained that he did not go to the secluded area, and that he was innocent. Instead, he told Walker, "I'm thinking I'm getting set up here and I ain't liking the smell of things."

Cunningham, on the other hand, struck a deal with law enforcement. In exchange for testifying against Hooley, Cunningham received what he deemed to be a "sweetheart deal" of his own creation: Rather than serving "life plus thirty" years for first degree kidnapping and aggravated battery (with a deadly weapon enhancement), in exchange for his testimony, Cunningham pleaded guilty to aggravated battery and received a unified sentence of fifteen years, with the possibility of parole after only four years.

Hooley was charged with one count of aiding and abetting aggravated battery and one count of kidnapping in the first degree. A jury trial was held in July 2014. At trial, Cunningham portrayed Hooley as the mastermind of the attack on Given. Cunningham testified that: Hooley knew of the secluded area, used the stun baton on Given, "interrogated" Given, and told Cunningham to stab Given and cut his throat. Cunningham also testified that Hooley instructed him on precisely where to stab Given. During cross-examination, Cunningham explained, "[Hooley]'s the one who told me how to do it. I had never – I never stabbed anyone before, so he's the one who told me how to stick it in the back of his neck and temple." And Cunningham testified that, after the assault, Hooley told him to "shut [his] mouth" and "[c]ome up with an alibi."

Cunningham added that, when he told Given "this is for all the times you hurt her," he was referring to Autumn Boyack. At the time of the attack, Boyack and Given had a four-year-old son together. Cunningham was also intimately involved with Boyack, having met Boyack through Given. Even so, Cunningham testified that Hooley had been the one to "interrogate" Given specifically about the extent of Given's sexual relations with a different woman—with whom Hooley had apparently been romantically involved.

Given also testified at Hooley's trial. Given's version of events differed from Cunningham's. Given corroborated the fact that Hooley was the one who used the stun baton and the fact that Cunningham was the one who stabbed him and cut his throat. Given testified, however, that except for Cunningham stating that "this is for all the times you hurt her" between the two attempts to cut Given's throat, no one spoke during the attack—not to "interrogate" him, nor to give instructions on how to stab him and cut his throat. Given further testified that he waited to identify the kidnappers because he knew Cunningham was a member of a violent white supremacist gang, the Aryan Peckerwoods, and he was fearful of retaliation by Cunningham or other members of Cunningham's gang.

During closing argument, Hooley's defense counsel focused on the lack of credibility on behalf of the prosecution's two eyewitnesses: Cunningham and Given. Both were felons and admitted drug addicts, and both had at least some affiliation with a white supremacist gang. Hooley's counsel could not, however, establish an identity for an alternate perpetrator if it was not Hooley. Hooley's counsel's argument was apparently unpersuasive because the jury found Hooley guilty of both counts. For aiding and abetting aggravated battery, Hooley was sentenced to a unified sentence of fifteen years, with five years fixed. For kidnapping in the first degree, Hooley

was sentenced to a unified sentence of twenty-five years, with five years fixed. The trial court ordered the sentences to be served concurrently.[1]

## B. Procedural History

Hooley moved for a new trial alleging juror misconduct (the basis of which is not relevant to his appeal), which the trial court denied. Hooley then appealed that denial, which the Idaho Court of Appeals affirmed.[2] *State v. Hooley*, No. 42627, 2015 WL 7758496, at *1–3 (Idaho Ct. App. Dec. 2, 2015) (unpublished opinion). Hooley then filed a pro se motion for a new trial, alleging the prosecution had improperly withheld favorable material under *Brady v. Maryland*, 373 U.S. 83 (1963). The trial court dismissed the motion as untimely under Idaho Criminal Rule 34. Hooley appealed, arguing the trial court should have considered the motion not as a motion for a new trial based on newly discovered evidence, but as a petition for post-conviction relief. The Court of Appeals again affirmed the trial court, as did this Court after Hooley petitioned for review. *State v. Hooley*, No. 46181, 2019 WL 2714067, at *1 (Idaho Ct. App. June 28, 2018) (unpublished opinion); *State v. Hooley*, 166 Idaho 417, 418, 460 P.3d 341, 342 (2020).

On September 18, 2019, while his appeal was pending before this Court, Hooley filed a pro se petition for post-conviction relief in district court, alleging that he had new evidence that proved he was innocent and that Given, Cunningham, and Boyack had "conspired to send me to prison for a crime Autumn [Boyack] and Ryan [Cunningham] committed." Hooley further requested he be appointed counsel. The district court granted Hooley's request for the appointment of counsel.

On December 2, 2019, Hooley's newly appointed counsel submitted an unsigned amended petition for post-conviction relief, which contained no mention of Hooley's actual innocence claim. Counsel reported that Hooley had refused to sign the amended petition.[3] Citing a breakdown

---

[1] This opinion will refer to the district court judge who presided over the criminal trial (Judge John K. Butler) as the "trial court" and to the district court judge who presided over the post-conviction case (Judge Rosemary Emory) as the "district court."

[2] The district court's recitation of facts states that Hooley filed a motion for a new trial and then separately appealed his sentence as being excessive. However, it appears that the district court was incorrect: The Court of Appeals affirmed the trial court's denial of a new trial on December 2, 2015. The Court of Appeals opinion does not address a claim that Hooley's sentence was excessive, nor is a separate appeal of Hooley's sentence reflected in Idaho's appellate records.

[3] The district court's recitation of facts states that Hooley filed an amended petition on December 19, 2019. However, no filings from December 19, 2019, are in the record. Additionally, on January 2, 2020, the State filed a "Motion to Dismiss or for Extension of Time to File State's Response," in which the State asserted: "Although the 'Report of Counsel' was filed on December 3, 2019, petitioner has still failed to present a verified amended petition."

4

in the attorney-client relationship, counsel requested leave of the court to withdraw from representing Hooley. The district court granted the request and appointed Hooley a new attorney on February 5, 2020. This second attorney did not submit an amended petition either and, on May 22, 2020, also requested leave to withdraw from representing Hooley. The district court approved the request and, on June 9, 2020, appointed a third attorney to represent Hooley.

On August 26, 2020, Hooley (through his new attorney) finally filed a verified amended petition.[4] In that petition, Hooley set forth the following claim of actual innocence based on newly discovered evidence:

> Mr. Hooley has discovered through the attached Affidavits to this Petition that there is new evidence, unavailable to Mr. Hooley at the time of trial, as to the truth of Mr. Hooley's involvement, or more accurately, his lack of involvement in the alleged incident. *See, Attached Affidavits of Jody Carr and Steven A. Bauer. . . .*

Hooley then cited the *Drapeau* standard for newly discovered evidence, and pleaded the following claim:

> The attached Affidavits, incorporated by reference herein, show that Mr. Hooley has evidence that was obtained after the trial – admissions by the co-defendant and alleged victim, that tend to show that their testimony was false. It follows that these statements, if presented at a new trial or if they were presented at Mr. Hooley's original trial would produce an acquittal because as offered above, the State's case and resulting verdict was based almost entirely upon the testimony of these two witnesses.

*See State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976).

Hooley thus submitted affidavits from two inmates, Jody Carr and Steven Bauer, who swore that, while incarcerated, they were personally told by Cunningham and Given that testimony during Hooley's trial was false and that this impeaching testimony, if presented at trial, would produce an acquittal.[5] Hooley also asserted that, contrary to *Brady*, the prosecution withheld an officer safety alert related to Cunningham, a "material witness," Boyack, and another individual, Nick Rice, all of which was favorable to Hooley.

The State moved to summarily dismiss Hooley's amended petition on October 16, 2020. In his memorandum responding to the State's motion, in addition to arguing his *Brady* claim, Hooley "request[ed the district court'] reach the merits of his claims based upon the U.S. Supreme

---

[4] This document is titled "Second Amended Petition for Post Conviction Relief." As previously noted, it appears from the record that no "first amended petition" was ever filed.

[5] Given was in custody during Hooley's trial on charges unrelated to this appeal.

Court [case] of *Schlup v. Delo*, 513 U.S. 298 (1995), and subsequent Idaho appellate decisions that reference *Schlup* with approval."

After hearing oral argument from Hooley and the State, the district court issued its memorandum decision and order, but the court did not analyze *Schlup* directly in doing so. Instead, the district court simply noted that the holding was cited with approval by the Idaho Court of Appeals in *Hays v. State*, 132 Idaho 516, 975 P.2 1181 (Ct. App. 1999). The district court concluded that Hooley's amended petition was untimely because he had not "demonstrated extraordinary circumstances that should permit equitable tolling of his petition as a general matter." Even so, the district court addressed each claim on the merits anyway, applying *Drapeau's* four-prong test to find that Hooley's proffered affidavits were inadmissible because the affidavits: (1) contained hearsay or were not based on personal knowledge; (2) were neither material nor impeaching; and (3) were simply consistent with testimony at trial. The district court concluded that "Hooley has not shown evidence so strong that this [c]ourt would not have confidence in the outcome of the trial." The district court summarily dismissed Hooley's amended petition for post-conviction relief on April 28, 2021. Hooley timely appeals.[6]

## II.    STANDARDS OF REVIEW

A petition for post-conviction relief is civil in nature. "Like a plaintiff in a civil action, the applicant for post-conviction relief must prove by a preponderance of evidence the allegations upon which the application for post-conviction relief is based." *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007). "Yet unlike the complaint in an ordinary civil action, a petition for post-conviction relief must contain more than 'a short and plain statement of the claim' that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(2)." *Marsalis v. State*, 166 Idaho 334, 339, 458 P.3d 203, 208 (2020) (quoting *Charboneau*, 144 Idaho at 903, 174 P.3d at 873). "The petition 'must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal.'" *Id.* (quoting *State v. Yakovac*, 145 Idaho 437, 444, 180 P.3d 476, 483 (2008)).

"Idaho Code section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, 'either pursuant to motion of a party or upon the trial court's own initiative.'" *Id.*

---

[6] In issuing this substitute opinion, we note that we considered all arguments made by the parties in the petition for rehearing, even those not expressly mentioned. It is after full consideration of the parties' arguments that we decline to grant the request for rehearing and, instead, issue this substitute opinion.

(quoting *Yakovac*, 145 Idaho at 444, 180 P.3d at 483). "Summary disposition of a petition for post-conviction relief is appropriate if the applicant's evidence raises no genuine issue of material fact." *Id.* (citing I.C. § 19-4906(b), (c)). When reviewing the "dismissal of a post-conviction relief application without an evidentiary hearing, this Court will determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file and will liberally construe the facts and reasonable inferences in favor of the non-moving party." *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007). "A court is required to accept the petitioner's unrebutted allegations as true, but need not accept the petitioner's conclusions." *Id.* "When the alleged facts, even if true, would not entitle the applicant to relief, the trial court may dismiss the application without holding an evidentiary hearing." *Id.* "Allegations contained in the application are insufficient for the granting of relief when (1) they are clearly disproved by the record of the original proceedings, or (2) do not justify relief as a matter of law." *Id.*

### III.  ANALYSIS

**A.    The district court did not err in summarily dismissing Hooley's petition for post-conviction petition as untimely.**

Hooley makes a series of interrelated arguments to contend that the district court erred in dismissing his post-conviction petition as untimely. First, Hooley alleges that, despite advocating for its application below, this Court need not decide whether the *Schlup*[7] gateway standard applies in state post-conviction cases. Second, Hooley argues that even if considered, the State has waived any argument on the *Schlup* gateway because it did not advance an argument on the standard below. Finally, Hooley maintains that he established actual innocence sufficient to warrant an evidentiary hearing.

*1.  Equitable tolling of the post-conviction relief statute of limitations is a limited right.*

The Uniform Post Conviction Procedure Act ("the Act") was passed by the 39th Session of the Idaho Legislature and became law in 1967. *See* I.C. §19-4901-11. The purpose of the Act, as set forth in section 19-4901, is to provide a remedy to those who have "been [wrongfully] convicted of, or sentenced for, a crime." Pertinent here, the statute provides relief for those wrongfully convicted when "there exists evidence of material facts, not previously presented and

---

[7] *Schlup v. Delo*, 513 U.S. 298, 316 (1995). A *Schlup* gateway claim provides the procedural means for a habeas petitioner to present an untimely claim. When such a claim is alleged, the trial court reviews only a procedural claim, not a substantive claim of actual innocence. This Court has not adopted this federal standard before, and we decline to do so now.

heard, that requires vacation of the conviction or sentence in the interest of justice . . . ." In addition, except as otherwise provided in the post-conviction act, "it comprehends and takes the place of all other common law, statutory, or other remedies heretofore available for challenging the validity of the conviction or sentence. It shall be used exclusively in place of them."

In construing the Act, as a statute, we are bound by ordinary rules of statutory construction. The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). The application of these principles leads us to the conclusion that we reach today.

2. *The* Schlup *gateway is not applicable to Idaho post-conviction proceedings*.

Hooley admits that his petition, filed more than three years after the conclusion of his first appeal, was untimely under the Act. He asserts, however, that his petition should be allowed to proceed to hearing under the *Schlup* gateway because of his newly discovered claim of actual innocence and to avoid a miscarriage of justice. We recognize that Idaho's courts have held that the post-conviction statute of limitation may be equitably tolled. But "[t]he standard for application of equitable tolling in post-conviction actions is a stringent one. . . ." *Schultz v. State*, 151 Idaho 383, 386, 256 P.3d 791, 794 (Ct. App. 2011). To qualify for such tolling, a petitioner must show that "an inability to file a timely petition denied him a meaningful opportunity to present his post-conviction claims." *Gutierrez-Medina v. State*, 157 Idaho 34, 36, 333 P.3d 849, 851 (Ct. App. 2014). "Equitable tolling has only been recognized in Idaho where the petitioner was incarcerated in an out-of-state facility without legal representation or access to Idaho legal materials and where mental disease and/or psychotropic medication prevented the petitioner from timely pursuing challenges to the conviction." *Id*. Even so, Hooley asserts the statute of limitations should be equitably tolled because he asserts his actual innocence here.

a. This Court is not bound to apply erroneous law to this case.

Hooley first asserts that, under the district court's implied application of *Schlup*, this Court is bound to do likewise since the State did not argue against the gateway in its response memorandum below. We disagree with this assertion on two bases: first, the State argued in principle that the actual innocence should not be applied to toll the statute of limitations in this

case; and second, this Court has already distinguished *Schlup* and held it is inapplicable to claims for post-conviction relief under Idaho law:

> The Supreme Court in *Schlup* . . . was addressing the showing required for a federal habeas petitioner to avoid a procedural bar to the consideration of his constitutional claims. *The Court was not setting forth a requirement applicable to state claims for post-conviction relief. [Schlup has no] application to these [post-conviction] proceedings, and the district court erred in relying upon [this authority].* However, "[w]here the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory." *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003).

*Fields v. State*, 151 Idaho 18, 22, 253 P.3d 692, 696 (2011) (emphasis added).

This holding colors how we view both the preservation question and the decision on the merits. *Fields* rejected *Schlup's* applicability in post-conviction cases, as we will address below. Given that conclusion, it is of note that the State argued below that Hooley's claim was untimely. Hooley conceded his claim was untimely, but argued the district court should reach the merits of his claim based on *Schlup*. Hooley failed to point out for the district court that this Court rejected the application of *Schlup* to post-conviction cases in *Fields*. Hooley simply argued below that the district court should apply the *Schlup* gateway based on a reference to *Schlup* in a 1999 Court of Appeals opinion (*Hays v. State*, 132 Idaho 516, 520, 975 P.2d 1181, 1185 (Ct. App. 1999)). That holding distinguished *Schlup* in post-conviction cases: "Here, unlike in *Schlup,* [Petitioner's] claim is *substantive, rather than procedural*." *Hays*, 132 Idaho at 520, 975 P.2d at 1185 (emphasis in original). Beyond that, *Schlup* has no application in post-conviction proceedings. *See Fields*, 151 Idaho at 22, 253 P.3d at 696. Hooley failed to reference the *Fields v. State* authority that goes directly against his position in any of his briefing before the district court.

This Court cannot have foisted upon it a legal rule that is 180 degrees different from the *Fields* precedent that binds Hooley, the State, and this Court, simply because of poor legal draftsmanship that led to a district court decision based on what legal authority was provided to that court. *See Miller v. Idaho State Patrol*, 150 Idaho 856, 864–65, 252 P.3d 1274, 1282–83 (2011) ("[T]here is always a risk of bad decision-making" when the briefing is "inadequate" or "unhelpful.").

Because we hold that the State did not waive consideration of this standard, and the district court implied it was good law in Idaho, we next examine whether the *Schlup* gateway applies to state post-conviction proceedings.

   b.   <u>*Schlup* does not apply to state post-conviction cases.</u>

9

The issue before this Court involves a question of law: should the *Schlup* gateway be made available to post-conviction petitioners outside the limits of Idaho Code section 19-4902? How this Court applies U.S. Supreme Court opinions to our cases is a question of law. *See id*; *Rhoades v. State*, 149 Idaho 130, 132, 233 P.3d 61, 63 (2010). "This Court exercises free review over questions of law." *Fields v. State*, 149 Idaho 399, 400, 234 P.3d 723, 724 (2010).

The question presented is whether Idaho's *statutory* post-conviction scheme (Idaho Code sections 19-4901-4911) should be modified by judicial fiat to include a tolling mechanism for claims of actual innocence under the statute. This is not a question of constitutional rights, or the great writ—indeed, nowhere in either Hooley's briefing below or in the district court's decision, is the writ of habeas corpus mentioned. The right to post-conviction relief is proscribed by what the statute provides; we are not in the business of rewriting statutes. *See State v. Doe*, 147 Idaho 326, 329, 208 P.3d 730, 733 (2009).

Under Idaho Code sections 19-4906(c) and 19-4902(a), "[t]he failure to file a timely petition is a basis for summary dismissal of a post-conviction petition." *Mahler v. State*, 157 Idaho 212, 214, 335 P.3d 57, 59 (Ct. App. 2014). The statute of limitations in a non-capital case requires that a post-conviction petition be filed within one year "from the expiration of the time for appeal or from the determination of an appeal or from the determination of a proceeding following an appeal, whichever is later." I.C. § 19-4902(a). When there has been a direct appeal, and the petition is the first petition for post-conviction relief (as in this case), "[t]he one-year period begins to run when the appellate court issues a remittitur." *Bahr v. State*, 172 Idaho 373, ___, 533 P.3d 282, 287 (2023) (quoting *Windom v. State*, 162 Idaho 417, 421, 398 P.3d 150, 154 (2017)). The only non-statutory basis for tolling the limitation period is when due process so requires. *Rhoades v. State*, 148 Idaho 247, 250-51, 220 P.3d 1066, 1069-70 (2009). We hold that due process does not require tolling here; this Court has already held that the gateway from *Schlup* does not apply to post-conviction proceedings, and it is not an additional means to toll the one-year statute of limitations.

Beyond the holding of this Court in *Fields*, we also reiterate that we are bound by what the post-conviction relief statute provides by way of actual innocence causes of action: Those based on newly acquired DNA or fingerprint evidence. I.C. §19-4902(b). We construe this statute as a whole, *Verska*, 151 Idaho at 893, 265 P.3d at 506, and note that post-conviction relief claims may only be filed "at any time," Idaho Code section 19-4902(b), when it is "more probable than not,"

based on DNA or fingerprint evidence, that "the petitioner is not the person who committed the offense." I.C. §19-4902(f).

Thus, *Schlup* is inapplicable here, and Hooley is bound by the statutory proscription of Idaho's post-conviction statute, as it is written. The dissent and Hooley take a myopic view of *Fields* to extract from it a suitable interpretation that permits application of *Schlup* to Idaho post-conviction cases. But the language quoted from this Court above makes clear that we have already recognized *Schlup* applies only to federal habeas proceedings and is inapplicable to Idaho's post-conviction system. Our holding in *Fields* was clear: *Schlup* was "not setting forth a requirement applicable to state claims for post-conviction relief." *Fields*, 151 Idaho at 22, 253 P.3d at 696.

While some states have applied the *Schlup* gateway in post-conviction cases, as the dissent suggests, many of those states do not differentiate their habeas corpus statutes from their post-conviction statutes. *See Berry v. State*, 363 P.3d 1148, 1152 (Nev. 2015) (involving a "third postconviction petition for a writ of habeas corpus"); *Lisle v. State*, 351 P.3d 725, 734 (2015) (affirming the district court's order dismissing petitioner's post-conviction petition for a writ of habeas corpus); *In re Carter*, 172 Wash. 2d 917, 933, 263 P.3d 1241, 1249 (2011) (applying *Schlup* to petitioner's personal restraint petition, under a combined habeas and post-conviction statute). Kansas and Missouri, which Hooley cited, do not apply *Schlup* to post-conviction cases at all; the cases relied on by Hooley applied the standard to the review of *habeas* cases. *See Skaggs v. State*, 479 P.3d 499, 508 (Kan. App. 2020); *Clay v. Dormire*, 37 S.W.3d 214, 218 (Mo. 2000). Idaho's post-conviction proceedings are independent civil actions authorized by statute and thus these out-of-state decisions are of little moment.

At bottom, we simply will not extend Idaho's statutes of limitation to a ground (actual innocence based on evidence other than DNA or fingerprints) that the legislature has not adopted. And as the State points out, even if we did, Hooley's evidence falls short of demonstrating actual innocence. Accordingly, because *Schlup* is unavailable to toll the statute of limitations, the district court did not err in concluding Hooley's petition was time-barred.

    c.  <u>Hooley's newly discovered evidence does not meet the *Drapeau* standard.</u>

Despite Hooley's argument below that *Schlup* was available as a gateway to present his procedurally barred constitutional claims, he argues now that his actual innocence claim was substantive, not procedural, as *Schlup* provides. Hooley's post-conviction claims were based on what he alleged was "newly discovered" evidence demonstrating he was innocent of the conduct

11

for which he was convicted. Thus, he argues, irrespective of the *Schlup* gateway, his claims should be recognized as newly discovered evidence. His claim was supported by declarations from two witnesses—Jody Carr and Steven Bauer—who alleged that the trial testimony from Hooley's co-defendant was false.

The district court addressed this claim directly, and applied Idaho's newly discovered evidence standard from *State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976) in ruling against Hooley. That standard provides:

> (1) that the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence or the part of the defendant.

97 Idaho at 691, 551 P.2d at 978.

Hooley now argues that the evidence from Carr and Bauer meets all four prongs of this test; however, the State argued below that, even if admitted, nothing within either affidavit was material evidence; any value from the affidavits was merely impeachment. The district court agreed, noting that the evidence from Carr and Bauer, even if admissible, (a conclusion we accept for Hooley's argument) was either cumulative, or perhaps impeaching, and that it failed to satisfy the second and third requirements for newly discovered evidence for that reason. The district court noted that the affidavits from Carr and Bauer established the following facts:

> In his affidavit, Carr provides that he was housed with Cunningham, Given, and Hooley at Idaho Department of Corrections at various times. According to this affidavit, Given told Carr that Cunningham cut Given's throat and that Cunningham told Given the only way to protect his wife was to put the blame on another person. Carr also provides that while being housed with Cunningham, Cunningham admitted to cutting Given's throat.

> In his affidavit, Bauer claims that he lived with Cunningham while in protective custody. He alleges that he was told by Cunningham that he set up Hooley, and that he would brag about how he stuck five inches of steel into Given's head and slit his throat from ear to ear. In addition, he provides that Cunningham told him that the police in Blackfoot and Gooding told him what to say in court.

> [This] evidence, by way of affidavits of Carr and Bauer, is neither material nor impeaching. Even if the affidavits were admissible evidence, the affidavits of Carr and Bauer are generally consistent with the trial testimony. If the information in the affidavits had been presented at trial, it is not likely to have resulted in an acquittal. The affidavits are in agreement with Cunningham's own trial testimony in that he cut Given's throat.
> . . .

12

The only information that is arguably helpful to Hooley are the statements that Cunningham allegedly made that he had to put the blame on someone else and that he set Hooley up. However, not only is this hearsay, it is merely impeachment evidence. Evidence that is merely impeaching or cumulative, rather than material, does not justify a new trial based on newly discovered evidence.

We agree with the district court's analysis.

The bottom line, even if this evidence would have been admitted, it is, at best, merely contradictory evidence that is insufficient to produce an acquittal. Newly discovered evidence must be "material, not merely cumulative or impeaching." Evidence is material when it has "some logical connection with the consequential facts." *State v. Ellington*, 157 Idaho 480, 486, 337 P.3d 639, 645 (2014) (citing BLACK'S LAW DICTIONARY 1066 (9th ed. 2009)). Here, the newly discovered evidence failed to establish the requisite elements of being "beyond impeaching" to a degree sufficient to result in Hooley's acquittal.

### d. Hooley's petition is untimely.

For Hooley to file a petition for post-conviction relief within the statute of limitations, he had one-year from the date this Court issued a remittitur on his appeal—December 18, 2015. Hooley, however, waited until September 18, 2019, to file his petition for post-conviction—more than three years after the deadline. As a substantive claim of innocence based on new evidence, the legislature has provided a one-year statute of limitations period. I.C. §§ 19-4901(4), 19-4902(a). Absent a showing that the one-year limitation should be tolled, the failure to file a timely petition for post-conviction relief is a basis for dismissal of the petition. *Bahr*, ___ Idaho at ___, 533 P.3d at 287; *Kriebel v. State*, 148 Idaho 188, 190, 219 P.2d 1204, 1206 (2009) (citing *Evensiosky v. State*, 136 Idaho 189, 190, 30 P.3d 967, 968 (2001)). A time-barred petition for postconviction relief must be dismissed. *Evensiosky*, 136 Idaho at 190–91, 30 P.3d at 968–69. Consequently, there is no avenue of relief available to Hooley under Idaho's post-conviction statute.

For example, under Idaho Code section 19-4901(a)(1) or (a)(4), a petition for post-conviction is available if: "the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of this state[,]" or if "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice[.]" If we were to generously construe Hooley's claim of actual innocence as falling within the confines of either provision, he is time barred with no mechanism to toll the statute of limitations. The only statutory exception available to Hooley to toll the one-year

13

limitation period is for actual innocence claims based on fingerprint or DNA evidence. I.C. § 19-4902(b). Neither Hooley's petition for post-conviction nor the declarations in support were based on fingerprint or DNA evidence.

Regardless of the subsection under which we consider Hooley's claim, whether his innocence claim was one of substance or procedure, he is time-barred. Hooley cannot assert actual innocence as a procedural claim to toll the statute of limitations for his other constitutionally based claims because we decline to adopt *Schlup*. Neither can Hooley assert a substantive claim of actual innocence beyond the statute of limitations set by the legislature because the claim does not invoke DNA or fingerprints. Under either scenario, Hooley's petition fails.

**B. The district court did not err in dismissing Hooley's *Brady* claim.**

In his amended petition, Hooley asserted that, in violation of *Brady*[8], the prosecution withheld information related to an officer safety alert related to Cunningham and Rice, which favored Hooley's defense. After the attack on Given, the Joint Investigations Division of the Bingham County Sheriff's Office and Blackfoot Police Department issued an "officer safety alert" regarding Cunningham, Rice, and Boyack. Although Hooley's trial counsel knew about the officer safety alert, the version of the alert obtained by Hooley after the trial included handwritten notes identifying Cunningham as the "primary cutter" and Boyack as a "material witness." Regarding Rice, the handwritten notes stated: "Not presently wanted for this crime. Officer safety only @ [sic] this time Aryan Nations[.]"

The district court concluded that, although Hooley's petition was untimely, his *Brady* claim "appear[ed] to have been made within a reasonable time after its discovery and therefore, is not time-barred." However, the district court further concluded Hooley's *Brady* claim failed on its merits. The district court determined that evidence linking Rice to the Aryan Nations was "neither exculpatory nor impeaching" and therefore was not favorable to Hooley. The district court further concluded that Hooley "failed to demonstrate resulting prejudice from any failure by the State to produce this information." The district court reasoned that "[t]he possibility that both Rice and Cunningham were affiliated with the Aryan Nations organization does not by itself establish that Cunningham and Rice knew one another or that it would make it any more or less likely that Hooley was involved in the attack on Given." Additionally, the district court determined the officer safety alert would have been inadmissible at trial because it was not relevant to Hooley's

---

[8] *Brady v. Maryland*, 373 U.S. 83 (1963).

underlying offenses. The district court noted that "[t]here was overwhelming evidence at trial supporting the jury verdict finding Hooley guilty" and ultimately concluded "Hooley [had] not shown evidence so strong that this [c]ourt would not have confidence in the outcome of the trial."

On appeal, Hooley contends the district court erred in dismissing his *Brady* claim. Hooley first asserts the evidence is favorable to him. He argues that "evidence that Rice–a known associate of Cunningham, who[m] the police suspected of harboring Cunningham after the attack on Given– is also a fellow member of the Aryan Nations suggests that it was Rice and Cunningham who attacked Given." Hooley further contends the evidence is relevant because "the identity of Cunningham's accomplice was of central consequence to the offenses Mr. Hooley was charged with."

We first address Hooley's contention that the State waived its argument that Hooley's *Brady* claim was untimely based on the "forty-two-day" rule. This forty-two-day rule comes from the "Special appellate and post-conviction procedure for capital cases," and provides "[w]ithin forty-two (42) days of the filing of the judgment imposing the punishment of death, and before the death warrant is filed, the defendant must file any legal or factual challenge to the sentence or conviction that is known or reasonably should be known." I.C. § 19-2719(3). While the State did not make this argument below, the rule does not apply here, and thus does not affect whether Hooley's petition was untimely. Below, the State moved to dismiss both of Hooley's claims under Idaho Code section 19-4902 because the entire petition was untimely. The State's argument on appeal that Hooley's *Brady* claim was untimely under the same statute is, thus, preserved.

Even so, while Hooley did not assert his *Brady* claim within the time proscribed under Idaho Code section 19-4902, this Court has considered petitions for post-conviction stemming from a *Brady* violation within a "reasonable time" after the discovery of the violation before. *Charboneau v. State*, 144 Idaho 900, 905, 174 P.3d 870, 875 (2007). The district court also considered this "reasonable time" standard. It is not a rigid rule but one this Court considers case-by-case. Based on the facts before us, we hold that Hooley's delay was unreasonable.

Hooley learned of the notation on the officer safety report on April 2, 2020. On April 3, Hooley filed for a motion for extension of time, requesting another thirty days—not because of any newly discovered evidence—but because COVID-19 within the prison reduced his ability to work on his case. The district court granted his request and extended his time to file a second-amended petition to May 8, 2020. On May 5, 2020, Hooley filed a second request to extend time.

15

Again, he did not mention discovering new evidence, but he requested two more weeks so that he could communicate with his counsel and because he was not feeling well. The court granted that motion, giving him until May 22, 2020. On May 22, 2020, his attorney filed a notice of withdrawal, citing a breakdown in communication with Hooley based on the attorney's ethical obligations to Hooley. The court appointed another public defender to represent Hooley in his post-conviction case on June 9, 2020. On July 1, 2020, Hooley filed a third request to extend time to file his second amended petition for post-conviction, again with no mention of newly discovered evidence. The court granted that motion the same day, giving Hooley until July 31, 2020, to file his petition. On July 24 and August 18, Hooley filed two more motions requesting more time, with no reference to the *Brady* material cited on appeal. The court granted both, and Hooley filed his amended second amended petition for post-conviction on August 26, 2020.

Thus, Hooley had nearly five months from the date he received the notations until the date he filed, and he failed to explain his delay once he did file. As noted, he filed multiple motions during that five-month period without referencing this new evidence. As this Court explained in *Charboneau*, while assessing a capital post-conviction petitioner's claim of reasonableness, "[t]his Court, in the capital context, has measured timeliness from the date of notice, not from the date a petitioner assembles a complete cache of evidence." *Charboneau*, 144 Idaho at 905, 174 P.3d at 875. The same rule applies here. Based on the facts of Hooley's case, a delay of five months was unreasonable. Therefore, the district court's summary dismissal of Hooley's *Brady* claim without an evidentiary hearing is affirmed.

## IV.   CONCLUSION

For these reasons, the district court's summary dismissal of Hooley's petition for post-conviction relief is affirmed.

JUSTICES BRODY, MOELLER, AND BURDICK, pro tem, CONCUR.

STEGNER, J., dissenting.

I recognize that there is no such thing as a perfect criminal justice system. However, when mistakes are made and an innocent person is convicted, justice demands that we rectify that mistake. Accordingly, I would reach the merits of both Hooley's actual innocence claim and his claim that the prosecution suppressed favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Further, I would hold that Hooley is entitled to an evidentiary hearing on both his

post-conviction claims. Because I conclude that the district court erred in summarily dismissing Hooley's petition for post-conviction relief, I respectfully dissent.

Idaho law provides a mechanism for a person who is wrongfully convicted of a crime to prove his or her innocence of that crime. The majority contends that actual innocence claims may only be brought if DNA or fingerprint evidence supports the claim. *See* I.C. § 19-4901(a)(6). However, Idaho Code section 19-4901(a)(4) provides relief when "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice[.]" In my view, nothing "requires vacation of the conviction or sentence in the interest of justice" more than actual innocence.

This is true whether the facts that establish the petitioner's innocence come to light the day after trial or a decade after trial. Rigid application of the one-year time limit would unreasonably bar a petitioner from bringing a meritorious claim of actual innocence simply because the information—which was, by definition, not available to him at trial—remained hidden from him for another year. I.C. §§ 19-4901(b), 4902(a). Such cases are, in my view, "within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice[.]'" *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). As such, I would conclude that Hooley's claim of actual innocence should be equitably tolled.

Relying on *Fields v. State*, 151 Idaho 18, 253 P.3d 692 (2011), the majority concludes this Court has already determined *Schlup* does not apply in Idaho. However, the present case is readily distinguishable from *Fields*. Hooley's claim of actual innocence is based upon newly discovered evidence contained in the affidavits of Jody Carr and Steven Bauer. In *Fields*, the Court expressly acknowledged that the petitioner had not brought a claim based on newly discovered evidence:

> Idaho Code § 19-4901(a)(4) provides a claim for post-conviction relief when "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice." Fields did not allege in his application for post-conviction relief that he was making a claim based upon newly discovered evidence. Likewise, he did not argue to the district court that he was making a claim under section 19-4901(a)(4) based upon newly discovered evidence. Finally, he did not make such claim on appeal. He simply argued that such affidavits and the DNA test results established a claim of innocence under section 19-4901(a)(6).

151 Idaho at 25, 253 P.3d at 699. Thus, *Fields* is not controlling here.

Additionally, while I recognize that the United States Supreme Court's holding in *Schlup* applies to federal *habeas* petitions in capital cases, I see no reason not to extend *Schlup* to the case

at bar. As I have explained, actual innocence is a distinct and colorable claim under Idaho law. An actual innocence claim does not exist under federal law. Rather, as a matter of procedure, a federal petitioner must make a showing of actual innocence in order for his or her time-barred substantive constitutional claims to be heard on the merits. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). If time-barred constitutional claims may be heard if the petitioner can show he or she is actually innocent, why should we not allow Idaho petitioners to be heard on the merits of their actual innocence claims, even past the one-year time limit? I do not disagree that constitutional claims are important; however, claims of actual innocence are at least as important, maybe even more so. I do not condone closing the doors of the courthouse for the petitioner who was wrongfully convicted. If a mistake was made at trial that caused the wrongful conviction of an innocent person, that mistake should be fixed. We should never turn a blind eye to such a claim. The day we let innocence take a back seat to finality is the day we should cease to be judges.

I would further conclude that Hooley is entitled to an evidentiary hearing on the merits of his actual innocence claim. In *State v. Drapeau*, this Court set forth four elements that must be met for a criminal defendant to be entitled to a new trial based on newly discovered evidence:

> A motion based on newly discovered evidence must disclose (1) that the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant.

97 Idaho 685, 691, 551 P.2d 972, 978 (1976) (quoting 2 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL s 557, at 515 (1969)). The parties agree that the district court correctly concluded Hooley had established the first and fourth elements. They narrow their dispute to whether the district court was correct in concluding Hooley had failed to meet the second and third elements – whether the evidence was material and likely to produce an acquittal.

The newly discovered evidence is, in my view, material. As pointed out by Hooley on appeal, "other than [Ryan] Cunningham's and [Jason] Given's false testimony[,] . . . [t]here was no evidence linking Mr. Hooley to the offense[.]" Cunningham and Given were the prosecution's star witnesses at Hooley's trial. They were the only two people that had been in the secluded area when Given was attacked and left for dead. The prosecution presented no forensic evidence linking Hooley to the crime. The new evidence tends to show that Given and Cunningham—the only two eyewitnesses to the attack on Given—knowingly falsified the only testimony that placed Hooley at the scene of the crime. Assuming the information in the affidavits is true, as is required when

18

reviewing the summary dismissal of a post-conviction petition, Given and Cunningham both admitted to lying under oath at trial specifically regarding Hooley's involvement in the commission of the attack on Given. Thus, the new evidence likely has "some logical connection" to a consequential fact: whether Hooley was Cunningham's accomplice. *See State v. Ellington*, 151 Idaho 53, 74, 253 P.3d 727, 748 (2011) (explaining that the touchstone of materiality is whether the evidence has "some logical connection with the consequential facts") (quoting *Material Evidence*, BLACK'S LAW DICTIONARY 1066 (9th ed. 2009)).

I would also conclude that the newly discovered evidence, if introduced at a new trial and believed by the trier of fact, "will probably produce an acquittal[.]" *Drapeau*, 97 Idaho at 691, 551 P.2d at 978. There was precious little evidence implicating Hooley other than Cunningham's and Given's testimony. Accordingly, at a new trial, Hooley could show not only that Cunningham and Given lied on the stand and were therefore unreliable witnesses, but he could also show that they had planned to falsely testify as a plan to set him up. Accordingly, liberally construing facts and reasonable inferences in Hooley's favor and assuming the new evidence is true, the new evidence would probably produce an acquittal.

Thus, in my view, Hooley has established there is an issue of material fact as to whether he is entitled to a new trial based on newly discovered evidence. I would hold that the district court erred in summarily dismissing Hooley's actual innocence claim without holding an evidentiary hearing. Therefore, I dissent from the majority's decision regarding Hooley's actual innocence claim.

I also dissent from the majority's decision regarding Hooley's *Brady* claim. Pointing to *Charboneau v. State*, 144 Idaho 900, 905, 174 P.3d 870, 875 (2007), the majority acknowledges that "this Court has considered petitions for post-conviction stemming from a *Brady* violation within a 'reasonable time' after the discovery of the violation before." However, the majority contends that the "nearly five months" between when Hooley received the officer safety alert notations and when he filed his amended petition was an unreasonable amount of time. I disagree. Hooley filed multiple requests to extend his filing time—none of which were opposed by the State below. Furthermore, Hooley first learned of the notations on April 2, 2020—the beginning of the Covid-19 pandemic. As evidenced by the transcripts in the record, the Covid-19 pandemic prevented Hooley's counsel from physically meeting with him at the prison. Given these circumstances, I do not find a five-month delay to be unreasonable.

19

Having reached the merits of Hooley's *Brady* claim, I would conclude he is entitled to an evidentiary hearing.

> The State has a duty to disclose exculpatory evidence to a defendant. This duty exists even in the absence of a request by the defendant and extends to impeachment evidence as well as exculpatory evidence. In order to establish a *Brady* violation, there must be evidence that (1) is favorable to the accused because it is either exculpatory or impeaching; (2) was willfully or inadvertently suppressed by the State; and (3) was prejudicial or material in that there is a reasonable probability that its disclosure to the accused would have led to a different result. "Reasonable probability" of a different result is shown when the suppression "undermines confidence in the outcome of the trial."

*State v. Lankford*, 162 Idaho 477, 503, 399 P.3d 804, 830 (2017) (internal citations omitted).

The evidence that Nick Rice was involved in the Aryan Nations—the same gang in which Cunningham was a proud member—is favorable to Hooley. The district court reasoned that simply belonging to the same organization did not necessarily mean that Rice and Cunningham knew each other. However, on appeal Hooley points out that, not only did the two know each other, but law enforcement believed Rice had harbored Cunningham after the attack on Given. The fact that Rice was a member of the same gang as Cunningham makes it more likely that Rice and Cunningham conspired to set Hooley up and is, therefore, favorable to Hooley.

I would also conclude that the district court erred in concluding the handwritten notes were not material.

> [The] touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995). "Thus, evidence is material for purposes of a due process analysis if there is a reasonable probability that disclosure of the undisclosed evidence would have produced a different outcome in the proceeding." *Id.*

Hooley describes the evidence that Rice is associated with the Aryan Nations as "the final piece of the puzzle needed to show Rice was Cunningham's accomplice as it gives Cunningham a motive to protect Rice and concoct the false story about Mr. Hooley." He notes there were other facts linking Cunningham and Rice: "Rice and Cunningham were known associates"; "The police suspected Rice of harboring Cunningham after the attack and believed Rice to be dangerous";

20

"Rice was in possession of the items stolen from Given, suggesting that he stole them or assisted Cunningham in the theft"; "Rice's girlfriend [Autumn Boyack] had threatened to kill Given just a week prior to the attack, providing a motive for Rice." Hooley freely admits he was already in possession of these facts, but maintains that, had he been able to present the fact Rice was a member of the same gang as Cunningham to the jury, he could have established *why* Cunningham set Hooley up and lied on the stand. In its briefing before this Court, the State proclaims it is "incredible" that "Cunningham did not intimidate Given into exonerating him, but instead into exonerating his only accomplice." It stands to reason that a jury would have the same question: Without a motive to do so, why would Cunningham lie about the identity of his accomplice? Cunningham freely admitted at trial that he was the one who physically attacked Given and was given a "sweetheart deal" in exchange for his testimony. But why would he lie about the identity of his accomplice? Liberally construing facts and reasonable inferences in favor of Hooley, it is my view that Cunningham's and Rice's membership within the same gang, the Aryan Nations, could have supplied the answer to that question for the jury. Thus, Hooley has established there is an issue of material fact as to whether there is a substantial likelihood that the result of the trial could have been different and, thus, whether he is entitled to relief under *Brady* and its progeny.

In sum, Hooley met his initial burden at the summary dismissal stage regarding both his actual innocence claim and his *Brady* claim. In my view, he should be given his day in court and his case should not have been summarily dismissed without an evidentiary hearing. Accordingly, I respectfully dissent.

STEGNER, J., dissenting to the decision to deny Hooley's Petition for Rehearing.

The other four members of this Court who originally participated in this case have voted to deny Hooley's petition to rehear his appeal. I disagree with that decision. Because I think the majority is making one of the most important and egregious mistakes I have seen as a member of this Court, I find it necessary to explain why I would grant Hooley's petition to rehear his appeal.

I disagree with the majority's opinion in two important respects. First, for the reasons outlined in my original dissent as well as those advanced now by Hooley and the amicus in support of his petition for rehearing, I do not believe that Hooley's petition is time-barred. Of course, considering this as a purely statutory matter, as the majority does, Hooley's petition is untimely because it was filed after the one-year statute of limitations period. *See* I.C. § 19-4902(a). However, in my view, the Idaho Constitution affords Hooley a right to seek habeas corpus relief (whether it

is characterized as post-conviction relief or habeas corpus relief is immaterial), and that right cannot be diminished by the Idaho Legislature. As this Court has previously acknowledged, the Uniform Post-Conviction Procedure Act (UPCPA) is an expansion of an individual's habeas corpus right, not a constriction of it. *Dionne v. State*, 93 Idaho 235, 237, 459 P.2d 1017, 1019 (1969) ("This [C]ourt, therefore, construes the Uniform Post Conviction Procedure Act as an expansion of the Writ of Habeas Corpus and not as a denial of the same."). Accordingly, in cases such as this which involve a colorable claim of actual innocence based on newly discovered evidence, the constitutional right to seek habeas corpus relief should result in the equitable tolling of the UPCPA's statute of limitations.[9]

Second, I disagree with the majority regarding the merits of Hooley's actual innocence claim. The evidence presented by Hooley appears to satisfy the prima facie elements of the *Drapeau* standard and, at a minimum, warrants that he be afforded an evidentiary hearing. The two affidavits supporting Hooley's petition suggest that the State's two principal witnesses, Given and Cunningham, conspired to frame Hooley. While this evidence may be interpreted as hearsay, it nevertheless may still be admissible as substantive evidence because the affidavits include statements against penal interest by Given and Cunningham and are therefore an exception to the rule against hearsay. After all, the affidavits allege that both Given and Cunningham conspired to commit perjury by falsely testifying against Hooley. Accordingly, Hooley's newly discovered evidence goes beyond mere impeachment. It is false testimony that has been sworn to under oath. Perjury is a level of magnitude greater than mere impeachment and is material and likely to produce an acquittal. *State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976).

Because I disagree with the majority's decision in these two respects, I respectfully dissent from the denial of Hooley's petition for rehearing.

### A. Hooley's claim of actual innocence should not be time-barred.

---

[9] The one-year limitation period should be equitably tolled based on due process considerations. *See Charboneau v. State*, 144 Idaho 900, 904, 174 P.3d 870, 874 (2007) (permitting the equitable tolling of a post-conviction petition based on due process when new claims are discovered). The majority concludes that due process does not require tolling here because this Court purportedly rejected such an argument in *Fields* by declining to adopt the *Schlup* gateway. However, as my original dissent explained, *Fields* is distinguishable from this case because it did not involve an actual innocence claim based on newly discovered evidence. Moreover, the statute of limitations at issue in *Fields* is different than here. *See* I.C. § 19-2719(3). Section 19-2719(3) only applies to petitions that are "known or reasonably should be known." Thus, Hooley's petition would not have been considered untimely under section 19-2719(3) since it is based on evidence that was not known to Hooley previously.

I begin by noting the obvious: that the writ of habeas corpus is, without any doubt, a constitutional right preserved under Idaho's constitution. Article 1, section 5 of our constitution reads as follows: "Right of habeas corpus – The privilege of the writ of habeas corpus shall not be suspended, unless in case of rebellion or invasion, the public safety requires it, and then only in such manner as shall be prescribed by law." The ability to issue the great writ is part of this Court's original jurisdiction. Article V, section 9 states: "The Supreme Court shall also have original jurisdiction to issue writs of mandamus, certiorari, prohibition, and *habeas corpus*[.]" (Italics added.) In addition, the Idaho Legislature is *constitutionally* prohibited from interfering with this Court's original jurisdiction. Article V, section 13 of the Idaho Constitution reads: "Power of legislature respecting courts. – The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government[.]"

Read together, these provisions hold that every citizen is entitled to seek and, in meritorious cases, obtain a writ of habeas corpus, and this Court enjoys original and unfettered jurisdiction to issue such a writ. A corollary of this conclusion is that the Idaho Legislature has no ability to limit this Court's exercise of its constitutional power. This Court has previously explained the critical importance of habeas corpus being under the protection and guardianship of this Court. In 1964, this Court explained that the framers of Idaho's constitution placed greater protection over the writ of habeas corpus with this Court than in our sister states because the writ is outside the purview of the legislature:

> In many jurisdictions, the courts state that they are limited in habeas corpus proceedings, either by statute or by precedent to a simple remand or discharge of the prisoner. . . .
>
> A different rule prevails in Idaho. The writ of habeas corpus is recognized by the Declaration of Rights in the Idaho Constitution. Article 1, § 5. Although the legislature has made and provided reasonable regulation for its use (I.C. §§ 19–4201 through 19–4236), *the writ is not a statutory remedy, but rather a remedy recognized and protected by the Idaho Constitution. While the legislature (absent certain contingencies) is without power to abridge this remedy secured by the Constitution, it may add to the efficacy of the writ. Statutes are usually enacted for this purpose and should be construed so as to promote the effectiveness of the proceeding.* 39 C.J.S. Habeas Corpus § 3 (1944).

*Mahaffey v. State*, 87 Idaho 228, 230–31, 392 P.2d 279, 280 (1964) (italics added). In short, the Idaho Constitution limits the legislature in this realm to expanding, not diminishing, "the efficacy of the writ." *Id.* at 231, 392 P.2d at 280.

23

Five years later, the Idaho Supreme Court explained the relationship between the writ of habeas corpus and the newly enacted UPCPA:

> The Uniform Post Conviction Procedure Act was passed by the 39th Session of the Idaho Legislature and became law in 1967. The purpose of the Act is set forth in Section I. It does not specifically repeal the use of the Writ of Habeas Corpus but states that it takes the place of all common law, statutory or other remedies previously available. It therefore is broader in scope than a Writ of Habeas Corpus.
>
> This [C]ourt has previously stated that the Writ of Habeas Corpus is a constitutional remedy and statutes enacted to add to the efficacy of the writ should be construed so as to promote the effectiveness of the proceeding. *Mahaffey v. State*, 87 Idaho 228, 392 P.2d 279 (1964). *This [C]ourt, therefore, construes the Uniform Post Conviction Procedure Act as an expansion of the Writ of Habeas Corpus and not as a denial of the same.*

*Dionne*, 93 Idaho at 237, 459 P.2d at 1019 (italics added).

Next, citing its previous decisions in *Mahaffey* and *Dionne*, this Court reinforced these principles:

> Idaho Code § 19-4901(b) states that the Uniform Post-Conviction Procedure Act is the exclusive remedy for challenging the validity of a conviction or sentence once the time for direct appeal has expired. Because the writ of habeas corpus is a constitutional remedy, *Mahaffey v. State*, 87 Idaho 228, 392 P.2d 279 (1964), the Act has been construed by this Court as an expansion of the writ. *Dionne v. State*, 93 Idaho 235, 459 P.2d 1017 (1969). *Therefore, substance and not form governs and it is immaterial whether the petition or application is labeled as one for habeas corpus or post-conviction relief.*

*Still v. State*, 95 Idaho 766, 768, 519 P.2d 435, 437 (1974) (italics added).

Notwithstanding the foregoing case law, the majority's opinion makes no mention of the fact that Hooley has a constitutional right to seek a writ of habeas corpus under the UPCPA. Indeed, absent from the opinion is any recognition that the UPCPA is the statutory *expansion* of the preexisting constitutional right rather than a restriction of it. Instead, the majority bypasses the Idaho Constitution and this Court's jurisprudence and limits Hooley's right to postconviction relief to that prescribed by the legislature:

> The question presented is whether Idaho's statutory post-conviction scheme (Idaho Code sections 19-4901[–]4911) should be modified by judicial fiat to include a tolling mechanism for claims of actual innocence under the statute. This is not a question of constitutional rights, or the great writ—indeed, nowhere in either Hooley's briefing below or in the district court's decision, is the writ of habeas corpus mentioned. *The right to post-conviction relief is proscribed by what*

24

> *the statute provides*; we are not in the business of rewriting statutes. *See State v. Doe*, 147 Idaho 326, 329, 208 P.3d 730, 733 (2009).

*Hooley v. State*, No. 48846, slip op. at 10 (italics added). To suggest that the UPCPA "proscribe[s]" Hooley's ability to seek postconviction relief not only misunderstands our constitution but it also fails to give any credence to years of this Court's jurisprudence explaining the relationship between postconviction relief and the writ of habeas corpus. Unfortunately, and sadly, today's decision not only reduces the vibrancy and availability of the great writ, but it also cedes this Court's guardianship of the great writ to the Legislature. I view this as nothing short of constitutional abdication by this Court.

The majority's decision draws a substantive distinction between habeas corpus relief and post-conviction relief which does not (or at least should not) exist. For example, the majority's decision partially justifies its rejection of the *Schlup* gateway in post-conviction proceedings because, unlike some states, Idaho happens to "differentiate[] [its] habeas corpus statutes from [its] post-conviction statutes." *Hooley v. State*, slip op. at 11. However, as illustrated above, our precedent has long recognized that the UPCPA, notwithstanding its name, *is* a statute that encompasses, rather than replaces, the writ of habeas corpus. *See, e.g.*, *Dionne*, 93 Idaho at 237, 459 P.2d at 1019 ("This [C]ourt, therefore, construes the Uniform Post Conviction Procedure Act *as an expansion of the Writ of Habeas Corpus and not as a denial of the same.*" (italics added)).

The majority's misunderstanding of post-conviction relief is also evident from its conclusion that this case does not implicate habeas corpus relief simply because neither Hooley's briefing nor the district court explicitly mentioned it below. However, once again, our precedent explains that a claim under the UPCPA squarely implicates constitutional rights, including the writ of habeas corpus. In *Still*, this Court stated that the UPCPA is the "exclusive remedy for challenging the validity of a conviction or sentence once the time for direct appeal has expired. Because the writ of habeas corpus is a constitutional remedy, the Act has been construed by this Court as an expansion of the writ." 95 Idaho at 768, 519 P.2d at 437 (internal citation omitted).

How, then, can the majority claim that constitutional rights are not at issue in this case when the UPCPA is an expansion of the right to habeas corpus? Moreover, how can the majority fault Hooley for not mentioning the writ of habeas corpus when this Court's precedent as well as Idaho Code section 19-4901(b) instruct that the UPCPA is the "exclusive remedy" by which a criminal defendant may seek post-conviction relief? Indeed, our guidance in *Still* makes clear that "it is immaterial whether the petition or application is labeled as one for habeas corpus or post-

conviction relief." Thus, whether Hooley expressly mentioned "habeas corpus relief" is immaterial given our precedent. His claim under the UPCPA is enough to implicate his constitutional right to seek habeas corpus relief.

The Idaho Association of Criminal Defense Lawyers in its amicus brief accurately illustrates how the majority misunderstands the relationship between post-conviction relief and habeas corpus relief:

> One of the Court's reasons for withholding from Mr. Hooley an actual-innocence pathway was that he filed a post-conviction action below instead of a habeas petition. *See Hooley*, 2023 WL 2604004, at *7. However, that logic is inconsistent with Idaho law, authority elsewhere, and basic principles of collateral challenges to convictions. There is nothing about the difference between post-conviction and habeas procedure in Idaho that would make the latter inappropriate for actual-innocence arguments and not the former.

> For starters, it appears that the only basis the *Hooley* opinion had for attributing any significance to the term "habeas" to begin with is because it happens to be the device at issue in some of the U.S. Supreme Court's actual-innocence cases. *See Hooley*, 2023 WL 2604004, at *7 ("Even if we were to acknowledge the parallel between *federal habeas* and state post-conviction claims, any state habeas claims are distinct from state post-conviction proceedings."). In other words, the rationale is that because the U.S. Supreme Court has utilized actual innocence for federal *habeas* cases, it would at most only be available for state *habeas* cases— and not post-conviction actions. But the Court's analysis misunderstands the import of these terms in the federal regime. In federal court, the nomenclature makes no difference. The rule is simply that when a prisoner has a procedural avenue to contest the constitutionality of his conviction and sentence, he can avail himself of actual innocence to overcome a default—no matter what the avenue is called.

To the extent the majority views habeas proceedings as separate and somehow distinct or different from post-conviction proceedings, it is a gross misunderstanding of Idaho's statutory scheme and our jurisprudence from the time of the passage of the UPCPA.

The majority has effectively allowed the legislature to usurp and constrain this Court's constitutional authority. Today's decision adds to our more recent and, in my view, misguided jurisprudence which attempts to severely limit habeas corpus relief within the strictures of the UPCPA. *See McKinney v. State*, 133 Idaho 695, 703–04, 992 P.2d 144, 152–53 (1999) (internal citation omitted) ("The legislature may pass statutes regulating the use of the writ of habeas corpus."); *and Stuart v. State*, 149 Idaho 35, 47, 232 P.3d 813, 825 (2010); *Eubank v. State*, 130 Idaho 861, 863–64, 949 P.2d 1068, 1070–71 (Ct. App. 1997) ("[W]hen a petitioner is challenging the validity of his conviction, Idaho requires use of the procedures and remedies afforded under

26

the UPCPA."). To the extent these cases allow the legislature to define the constitutional right to seek habeas corpus relief, they are manifestly wrong. Until we arrive at that conclusion, the once great writ will be reduced to nothing more than a statutory right confined to the four corners of the UPCPA as defined by the legislature and not this Court.

Members of this Court like to talk about "staying within our lane." I wholeheartedly agree that we should not exceed our lane of travel. However, an important corollary of this concept is that we, as a Court, should not stand idly by when others, in this case the legislature, wittingly or unwittingly, cause us to lose sight of our proper authority and prerogative. We have all taken a solemn oath to support Idaho's constitution. With today's denial of Hooley's petition to rehear his case we have failed that solemn oath. This Court is denying the great writ, the writ of habeas corpus, to an individual who claims and has evidence of actual innocence. The majority concludes Hooley is not entitled to an evidentiary hearing on his claims. The magnitude of this decision is profound. It means we would rather promote finality above a colorable claim of innocence. Even when shown the error of our analysis, we decline to rehear the case.

The majority concludes that it cannot "extend Idaho's statutes of limitation to a ground (actual innocence based on evidence other than DNA or fingerprints) that the legislature has not adopted." *Hooley v. State*, No. 48846, slip op. at 12. However, this contradicts what this Court has long recognized: The UPCPA is an *expansion* of the writ of habeas corpus, which is, first and foremost, a constitutional remedy preserved and protected under the auspices of this Court. While the legislature may add to that right, it is wholly without power to abridge it. *See Mahaffey*, 87 Idaho at 230–31, 392 P.2d at 280; *Dionne*, 93 Idaho at 237, 459 P.2d at 1019. Rather, "'[i]t is emphatically the province and duty of the judicial department to say what the law is.'" *Nye v. Katsilometes*, 165 Idaho 455, 463, 447 P.3d 903, 911 (2019) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). This has never been more important than when this Court determines the rights enumerated by our state's constitution. To the extent this Court defers to the legislature to define the contours of the right to habeas corpus, we shirk our judicial duty and abdicate our authority and responsibility to give full effect to the rights of our citizens provided by our constitution.

For these reasons, I would grant Hooley's petition for rehearing. We need to determine whether the statute of limitations under Idaho Code section 19-4902(a) impedes Hooley's constitutional right to seek habeas corpus relief. While Idaho case law has generally upheld the

27

one-year limitation period from constitutional attacks, the facts and the arguments raised in those cases are distinguishable from this case. *See, e.g.*, *Eubank*, 130 Idaho at 863–64, 949 P.2d at 1070–71. Indeed, this Court has never addressed section 19-4902(a)'s constitutionality in the context of an actual innocence claim based on evidence discovered after the statute of limitation had already expired. *Cf. Abbot v. State*, 129 Idaho 381, 385, 924 P.2d 1225, 1229 (1996).[10]

As my original dissent explained, rigid application of the one-year time limit prevents petitioners from asserting meritorious claims of actual innocence simply because the evidence remained hidden until after the time limit had run. That may well be the case here, though we are unable to know without an evidentiary hearing.

Hooley has presented affidavits from two individuals who swear they were told by the prosecution's key witnesses (the only two witnesses who placed Hooley at the scene of the crime), Cunningham and Given, that they lied at Hooley's trial when they implicated him in serious crimes. If these allegations are true, this would seriously undermine the integrity of Hooley's conviction. The majority today would prefer to uphold the conviction of a potentially innocent man rather than expend judicial resources on an evidentiary hearing. I would conclude that, pursuant to Article I, section 5 of the Idaho Constitution, a petitioner with a colorable claim of actual innocence such as Hooley's, has a constitutional right to seek and obtain habeas corpus relief notwithstanding the legislature's efforts to limit that claim. As such, the statute of limitations should be equitably tolled to accommodate such a claim. The writ of habeas corpus should not depend on an arbitrary statute of limitations imposed by the legislature when the evidence to exonerate was not and could not have been known until after the statute expired.

**B. Hooley's newly discovered evidence satisfies the *Drapeau* standard.**

In its original opinion, the majority affirmed the district court's summary dismissal of Hooley's petition solely because it concluded the petition was time-barred under the UPCPA. However, now, in its substitute opinion, the majority reaches the merits of Hooley's claim and concludes that even if Hooley's petition were timely, it would still fail under the *Drapeau* standard. Specifically, the majority adopts the district court's reasoning that the evidence contained in Carr's

---

[10] In *Abbott v. State*, the Idaho Court of Appeals concluded that the UPCPA's statute of limitations should be tolled to accommodate a petition alleging that the defendant had been prevented from challenging his conviction because of mental incompetence both during and after his conviction. 129 Idaho 381, 385, 924 P.2d 1225, 1229 (1996). While the Court of Appeal's decision was based on due process, the result it reached is applicable to this case: Where circumstances outside the petitioner's control prevent the filing of a petition until after the one-year limitation period has expired, the statute of limitation should be equitably tolled to accommodate the petitioner's claim.

and Bauer's affidavits does not satisfy the second and third *Drapeau* elements in that it is neither material nor likely to produce an acquittal. (Neither party disputes that the evidence satisfies the first and fourth elements of the test set out in *Drapeau*.)

In my view, such a conclusion is, at best, premature, and at worst, patently wrong. The evidence Hooley has provided in support of his petition—construed liberally in favor of Hooley, as is required under our rules since he is the non-moving party—establishes that the prosecution's two principal witnesses framed Hooley for the kidnapping and aggravated battery of Given by perjuring themselves at Hooley's trial. Carr, for example, swears in his affidavit that Given said that "Ryan [Cunninghan] and he had 'set up'" Hooley. Likewise, in Bauer's affidavit, Bauer claims that "Cunningham did in fact say to me that he and his friends, Nick, Autumn [sic] had set up a man he called Hooley[.]"

Admittedly, as the district court noted, these out-of-court statements are likely hearsay if offered to prove that Given and Cunningham did in fact set Hooley up. But this does not prevent their admission if an exception to the rule against hearsay applies. *See* I.R.E. 804(b). The district court concluded, without any further analysis, that no hearsay exception applied to Carr's and Bauer's affidavits. However, the evidence is likely admissible under one of two different hearsay exceptions.

First, the statements likely qualify as statements against interest. Idaho Rule of Evidence 804(b)(3) defines a statement against interest as follows:

> (3) *Statement Against Interest*. A statement that:
>
> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

(Italics in original.) Here, a reasonable person would not admit to lying under oath or to framing another of a crime he had not committed because such conduct would expose the declarant to criminal liability. Moreover, the trustworthiness of Carr's and Bauer's affidavits is corroborated by the fact that both Carr and Bauer were fellow inmates (if not cellmates) of either Given or Cunningham when the purported statements were made, making it more likely that the alleged

statements in the affidavits actually occurred. In fact, Carr claims Given's statements were made while Given and he were cellmates in prison. Similarly, Bauer claims Cunningham's statements were made when Cunningham and he were inmates together. Therefore, both Given's and Cunningham's statements qualify as statements against their penal interests.

Of course, the statement-against-interest exception to the rule against hearsay only applies if the declarant is also unavailable to testify. *See* I.R.E. 804(a). Notably, a declarant is unavailable to testify if he invokes his Fifth Amendment privilege against self-incrimination, which would be the case if Given and Cunningham decline to testify based on their Fifth Amendment privilege. *See* I.R.E. 804(a)(1). Given's and Cunningham's statements to Carr and Bauer would, in that event, be admissible, not just as impeachment evidence, but as substantive evidence that Hooley had been framed.

Even if Given and Cunningham were available to testify and did in fact testify, I would still conclude that the statements in the affidavits are admissible under Idaho's residual hearsay exception. Under Idaho Rule of Evidence 803(24), hearsay is admissible if the following requirements are satisfied:

> (A) the hearsay statement has circumstantial guarantees of trustworthiness equivalent to those in Rules 803(1) to 803(23), (B) the statement is offered as evidence of a material fact, (C) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, (D) the general purposes of the rules of evidence, and the interests of justice, will best be served by admission of the statement into evidence, and (E) the proponent gives the adverse party adequate notice and information regarding use of the statement.

*State v. Ransom*, 124 Idaho 703, 708, 864 P.2d 149, 154 (1993) (internal citation omitted). Given's and Cunningham's statements in Carr's and Bauer's affidavits satisfy all the requirements for admission under the residual exception. The statements meet the preliminary qualifications of statements against penal interest under Idaho Rule of Evidence 804(b)(3) and, therefore, are presumed trustworthy. The affidavits are also both material and more probative than any other evidence because the statements are the only evidence available that prove Given and Cunningham falsely testified against Hooley. Finally, admitting the evidence is in the interest of justice because the affidavits indicate that a potentially innocent man has been wrongfully convicted. For these reasons, the statements in the affidavits are admissible under the residual exception to the rule against hearsay.

Accordingly, because the affidavits are admissible to substantively prove that Hooley was framed, Hooley's newly discovered evidence satisfies all four elements of the *Drapeau* standard. The second and third elements of *Drapeau* require "(2) that the [newly discovered] evidence is material, not merely cumulative or impeaching" and "(3) that it will probably produce an acquittal[.]" 97 Idaho at 691, 551 P.2d at 978 (internal citation omitted). The evidence here is material because, as explained, not only is it admissible to seriously undermine Given and Cunningham, but it is also likely admissible as substantive evidence to prove that Hooley was framed for the kidnapping and battery of Given.

Additionally, the affidavits of Carr and Bauer are not merely "impeaching" because they are tantamount to evidence of conspiracy and perjury, a level of magnitude substantially greater than mere impeachment. Indeed, this Court has previously concluded that, in certain cases, a conviction obtained using perjured testimony amounts to a due process violation. *See State v. Ellington*, 151 Idaho 53, 76, 253 P.3d 727, 750 (2011) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)) ("We also note that 'a conviction obtained by the knowing use of perjured testimony is fundamentally unfair' as a violation of due process."). In *Ellington*, this Court also held that when perjury is "particularly egregious . . . , a defendant will receive a new trial *even if that evidence is merely impeaching or cumulative*." *Id.* at 74, 253 P.3d at 748 (italics added) (holding that knowing use of perjured testimony from a law enforcement officer satisfied the second prong of *Drapeau* even if it was merely impeaching or cumulative). Like *Ellington*, I would similarly conclude that the use of perjured testimony by the State's two key witnesses in Hooley's case constitutes a due process violation.

Furthermore, it follows that the evidence in Carr's and Bauer's affidavits would likely produce an acquittal since it affirmatively proves Hooley's innocence. The State's case in Hooley's original trial relied extensively and critically on the testimony of Cunningham and Given. Without their testimony, it is exceedingly doubtful that Hooley would have been convicted. Therefore, these affidavits from Carr and Bauer rebut the State's only evidence linking Hooley to the kidnapping.

In sum, I would grant Hooley's petition to rehear his appeal. Hooley's petition is neither time-barred nor does it fail on its merits. The majority not only misconstrues Idaho's statutory and constitutional scheme, but it also fails to follow (without explanation) this Court's prior jurisprudence from the time Idaho's legislature enacted the UPCPA. This Court's precedent

indicates that Hooley's petition under the UPCPA implicates his constitutional right to seek habeas corpus relief. Hooley's request for rehearing should at a minimum be granted to determine whether the UPCPA's statute of limitations infringes on his right to seek habeas corpus relief. In the end, his petition for post-conviction relief should be tested at an evidentiary hearing to determine whether his claim of actual innocence may proceed. I believe the dismissal of his petition without a hearing was not only patently wrong but a miscarriage of justice. To reject Hooley's petition consigns a potentially innocent man to a lengthy future in an Idaho penitentiary. Accordingly, I respectfully dissent from the majority's decision to deny Hooley's petition to rehear his appeal.